Joan GUSTAFSON, L.F. and Frances Bolduc, Henry M. Hanson, John Locke, Douglas Howard, Orrin Ostlund, Robert Solheim and Allan E. Rutman, Plaintiffs,

v.

John A. STRANGIS, Jerry Alstead, David T. Dempsey, Alstead, Strangis and Dempsey, Incorporated, a Minnesota corporation; United Financial Group, Inc., a Minnesota corporation; Alstead, Strangis and Dempsey Tax Shelters Investment, Inc., a Minnesota corporation; First United Securities Corporation, a Minnesota corporation; United Performance Industries, Inc., a Minnesota corporation; Joseph Francis and Richard A. Salada, Jonathan Miner, Brad Haddy, Eric Gudrais, Jeffrey Wendel and National Association of Securities Dealers, Inc., a Delaware corporation, Defendants.

Michael R. FRANTZ, as Personal Representative for the Estate of Donald R. Frantz, Plaintiff,

v.

ALSTEAD, STRANGIS & DEMPSEY, INC., United Financial Group, Inc., United Performance Industries, Inc. and First United Securities Corporation (all Minnesota corporations); Jerry Alstead, David Dempsey, Joseph Francis, Richard Salada, Jonathan Miner, Brad Haddy, Erick Gudrais and Jeff Wendel; and National Association of Securities Dealers, Inc., a Delaware corporation, Defendants.

Chris CHASE, Michael Del Castello, Diamond Oil Company, Jerrold S. Frank, Muriel Greengard, Fred Halverson and Constance Halverson, North Star Pipe & Supply Company, John L. Olson, Peter Sidlow, and Dr. R. James and Mildred Vaccarella, Plaintiffs,

v.

ALSTEAD, STRANGIS & DEMPSEY, INCORPORATED, United Financial Group, Inc., United Performance Industries, Inc., and First United Securities Corporation (all Minnesota corporations); Jerry Alstead, David Dempsey, Joseph Francis, Richard Salada, Jonathan Miner, Brad Haddy, Erick Gudrais, and Jeff Wendel; and National Association of Securities Dealers, Inc., a Delaware corporation, Defendants.

Gabriel T. CHEHADEH, individually, and d/b/a N.A. Investment Management Corporation, and on behalf of himself and all others investing through Gabriel T. Chehadeh, individually, and d/b/a N.A. Management Corporation, Plaintiffs,

v.

Jerry ALSTEAD, David T. Dempsey, Joseph Francis and Richard Salada, individually and as directors of Alstead, Strangis & Dempsey, Inc., or United Financial Group, Inc., and John Doe, Mary Roe and XYZ Corporation, as assignees of Jerry Alstead, John Strangis, David T. Dempsey, and the directors of Alstead, Strangis & Dempsey, Inc., and Alstead, Strangis & Dempsey, Inc., a Minnesota corporation, United Financial Group, Inc., a Minnesota corporation, First United Securities Corporation, a Minnesota corporation, United Performance Industries, Inc., a Minnesota corporation, and the National Association of Securities Dealers, Inc., a Delaware corporation, and Jonathan S. Miner, Brad Haddy, Jeff Wendel and Eric Gudrais, Defendants.

Nos. 3–82 Civ. 965, 3–82 Civ. 1402, 4–82 Civ. 1223 and 4–83 Civ. 145.

United States District Court, D. Minnesota, Third Division.

Oct. 5, 1983.

Zimmerman, Caplan & Reed by Barry G. Reed, Minneapolis, Minn., for Gustafson.

Keith Simons, Hopkins, Minn., for Frantz.

Lindquist & Vennum by Norman Newhall, Minneapolis, Minn., for Chase.

Collins, Buckley, Sauntry & Haugh by Thomas J. Germscheid, St. Paul, Minn., for Chedhadeh.

Popham, Haik, Schnobrich, Kaufman & Doty by Clifford M. Greene, Scott E. Richter, Minneapolis, Minn., Andrew McR. Barnes, Washington, D.C., for defendant NASD.

## MEMORANDUM ORDER

ALSOP, District Judge.

This matter comes before the court upon the motion of defendant National Association of Securities Dealers, Inc. (NASD) to dismiss all claims against it in all of the above-entitled cases pursuant to Fed.R. Civ.P. 12(b)(6). Plaintiffs oppose the motion.

Plaintiffs in their complaints assert that defendant NASD failed to make a thorough investigation of Alstead, Strangis & Dempsey, Inc. (ASD), failed to report ASD's activities to the Securities and Exchange Commission (SEC), and failed to terminate the membership of ASD and its principals despite knowledge the NASD allegedly had regarding ASD's illegal activities. Plaintiff's maintain that these allegations give rise to liability under the Securities Exchange Act of 1934, 15 U.S.C. § 78a *et seq.* (hereinafter the Act). Specifically, plaintiffs claim §§ 15A and 27 of the Act create an implied private cause of action for damages. Plaintiffs also allege pendent state law claims.

Defendants contend that none of the claims against the NASD state a claim for which relief can be granted. Defendants note that federal securities laws do not expressly provide for causes of action against regulatory bodies like the NASD for failure to prevent member misconduct. Plaintiffs must therefore rely on an implied cause of action. The Supreme Court has recently restricted the availability of implied rights of action. Furthermore, implied causes of action undermine the concept of self-regulation, a central component of the Act. Allowing a private cause of action against the NASD for failure to enforce its ethical rules would discourage the creation of high standards. In addition, defendants say that there is no need to supplement the present enforcement scheme with a private cause of action because the SEC has pervasive authority to ensure that the NASD is complying with its responsibilities. The SEC can, among other things, add to or abrogate rules of the self-regulatory organization, can suspend or revoke the NASD's registration or can censure or impose limits on its activities for violation of NASD rules or any provision of the Act, and can discipline the NASD for failing to enforce compliance by any member with NASD rules, SEC rules, or the Act. The SEC can remove from office or censure any officer or director who willfully violates the rules and can bring an action to enjoin any activity that would violate the Act or the NASD's own rules.

The court agrees that the Act does not create a private cause of action for the NASD's failure to prevent member misconduct. In *Cort v. Ash,* 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975), the Supreme Court set forth the following factors a court

must consider in deciding whether a private cause of action under a statute is implied: (1) whether the plaintiff is a member of the class for whose especial benefit the statute was enacted; (2) whether there is any indication of congressional intent to create a private remedy; (3) whether a private remedy is consistent with the underlying purposes of the legislative scheme; and (4) whether the cause of action is one traditionally relegated to state law so that it would be inappropriate to infer a cause of action based solely on federal law.

More recently, the Supreme Court has modified that four-part test. In *Touche Ross & Co. v. Redington,* 442 U.S. 560, 99 S.Ct. 2479, 61 L.Ed.2d 82 (1979), the Court held that customers of securities brokerage firms had no implied cause of action for damages under § 17(a) of the Act against accountants who audited the financial reports required by that section to be kept and filed. The Court there said, "[T]he fact that a federal statute has been violated and some person harmed does not automatically give rise to a private cause of action in favor of that person. . . . Instead, our task is limited solely to determining whether Congress intended to create the private right of action. . . . *Id.* at 568, 99 S.Ct. at 2485 (citation omitted). The Court noted that in other cases finding implied private remedies, the statute in question at least prohibited certain conduct or created federal rights in favor of private parties. Section 17(a), in contrast, neither conferred rights on private parties nor proscribed any conduct as unlawful. The legislative history was silent on the question of whether a private right of action for damages under § 17(a) should or should not be available. While recognizing the four *Cort v. Ash* factors, the Court explained that not each was entitled to equal weight. "The central inquiry remains whether Congress intended to create, either expressly or by implication, a private cause of action," the Court said. *Id.* at 575, 99 S.Ct. at 2489. The first three *Cort* factors are simply traditional means of ascertaining legislative intent. The Court

did not find it necessary to consider whether an implied remedy was necessary to effectuate the purpose of the statute or whether the cause of action was one traditionally relegated to state law because the Court found Congress did not intend to create a private cause of action.

Furthermore, the Court found that plaintiffs' reliance on § 27 of the Act to create a remedy was misplaced. Section 27 is a jurisdictional section: it creates no cause of action of its own force. The Court said that the source of plaintiffs' rights must be found, if at all, in the substantive provisions of the Act which they sought to enforce, not in its jurisdictional provision. Finally, the Court said that the mere fact § 17(a) was designed to protect brokers' customers did not require the implication of a private damages action in their behalf.

The Court followed this same reasoning in *Transamerica Mortgage Advisors, Inc. v. Lewis,* 444 U.S. 11, 100 S.Ct. 242, 62 L.Ed.2d 146 (1979) when it held that § 206 of the Investment Advisors Act of 1940, 15 U.S.C. § 80b–1 *et seq.,* did not create a private cause of action. The Court observed that the question was basically a matter of statutory construction. "While some opinions of the Court have placed considerable emphasis upon the desirability of implying private rights of action in order to provide remedies thought to effectuate the purposes of a given statute, . . . what must ultimately be determined is whether Congress intended to create the private remedy asserted. . . ." *Id.* at 15–16, 100 S.Ct. at 245 (citation omitted). The Court again rejected public protection as a basis for implying a cause of action. *Id.* at 24, 100 S.Ct. at 249.

Despite the above authority, plaintiffs would have this court imply a cause of action based on §§ 6 and 15 of the Act, read in conjunction with § 27.[1] Plaintiffs also specifically invoke the investor protection argument rejected in *Touche Ross* and *Transamerica* and rely on case law that

---

**1.** *See* "Memorandum of Points and Authorities of Gabriel Chehadeh" at 3. Those sections

appear to be the ones relied upon to create the private remedy.

largely predates the *Touche Ross* and *Transamerica* modifications of *Cort v. Ash.* The court is not persuaded by plaintiffs' arguments.

Numerous courts have held that there is no private cause of action for violations of the Act or for violations of stock exchange or NASD rules. *See, e.g., Walck v. American Stock Exchange,* 687 F.2d 778 (3d Cir. 1982), *cert. denied,* —— U.S. ——, 103 S.Ct. 2118, 77 L.Ed.2d 1300 (1983) (§§ 6 and 7); *Jablon v. Dean Witter & Co.,* 614 F.2d 677 (9th Cir.1980) (no cause of action for violation of stock exchange, § 6, or NASD, § 15A, rules); *Kaufman v. Magid,* 539 F.Supp. 1088 (D.Mass.1982) (stock exchange rules); *Emmons v. Merrill Lynch, Pierce, Fenner & Smith,* 532 F.Supp. 480 (S.D.Ohio 1982) (stock exchange and NASD rules); *Holtzman v. Proctor, Cook & Co., Inc.,* 528 F.Supp. 9 (D.Mass.1981) (§ 6); *Colman v. D.H. Blair & Co.,* 521 F.Supp. 646 (S.D.N.Y. 1981) (stock exchange and NASD rules); *Baselski v. Paine, Webber, Jackson & Curtis, Inc.,* 514 F.Supp. 535 (N.D.Ill.1981) (§§ 6 and 19); *Klitzman v. Bache Halsey Stuart Shields, Inc.,* 499 F.Supp. 255 (S.D.N. Y.1980) (NASD's rules); *Nelson v. Hench,* 428 F.Supp. 411 (D.Minn.1977) (no cause of action for breach of "know your customer" rules of NYSE and NASD);[2] *Lange v. H. Hentz & Company,* 418 F.Supp. 1376 (N.D. Texas 1976) (no cause of action for breach of §§ 2, 13 or 18 of NASD rules); *but see Smith v. Smith, Barney, Harris, Upham & Co., Inc.,* 505 F.Supp. 1380 (W.D.Mo.1981) (permitting private cause of action under NYSE Rule 405, with no reference to *Cort v. Ash* or later Supreme Court decisions).

Plaintiffs rely on *Merrill Lynch, Fenner & Smith, Inc. v. Curran,* 456 U.S. 353, 102 S.Ct. 1825, 72 L.Ed.2d 182 (1982) for the proposition that Congress' failure in 1975 to amend the Act to eliminate a private cause of action requires the conclusion that a private right of action exists. That reasoning, however, is flawed. In *Curran,* the Court considered whether or not the Commodity Exchange Act, 7 U.S.C. § 1 *et seq.* (1982), created an implied private right of action for fraud in favor of a customer against his or her own broker. The CEA had been amended several times. The Court noted that its focus should be on the state of the law at the time the legislation was enacted, particularly on Congress' perception of the law that it was shaping or reshaping. The Court said:

> When Congress enacts new legislation, the question is whether Congress intended to create a private remedy as a supplement to the express enforcement provisions of the statute. When Congress acts in a statutory *context in which an implied private remedy has already been recognized* by the courts, however, the inquiry logically is different. Congress need not have intended to create a new remedy, since one already existed; the question is whether Congress intended to preserve the preexisting remedy.

*Id.* at 378, 102 S.Ct. at 1839 (emphasis added). The Court found that courts had routinely and consistently recognized a private cause of action under the CEA prior to the comprehensive amendments of 1974. The consensus of opinion concerning the existence of that remedy was "uniform and well understood." *Id.* at 380, 102 S.Ct. at 1840. Thus, the fact that a comprehensive reexamination and significant amendment of the CEA left intact the statutory provisions under which federal courts had implied a cause of action was evidence that Congress

---

**2.** In *Morris v. Stifel, Nicolaus & Co., Inc.,* 600 F.2d 139, 146 (8th Cir.1979), the court said, "Whether and to what extent a private cause of action is available for damage to a customer through a violation of a private trade association rule are questions this Court has not conclusively resolved," *citing Shull v. Dain, Kalman & Quail, Inc.,* 561 F.2d 152, 160 (8th Cir. 1977), *cert. denied,* 434 U.S. 1086, 98 S.Ct. 1281, 55 L.Ed.2d 792 (1978); *Lincoln Commodity Services v. Meade,* 558 F.2d 469, 474 n. 1

(8th Cir.1977). The court ended its cite with a *but see* reference to *Nelson.* That statement seems to say that *Nelson* was still considered good law in 1979 and that the Eighth Circuit did not view the issue at that time as resolved. Given the substantial modifications made since 1979 by the Supreme Court in the standards for implying private causes of action, this court concludes that the issue is still an open one in this circuit.

intended to preserve that remedy and the Court so held.

In contrast, a private cause of action for the NASD's failure to supervise its members had not been routinely and consistently recognized before the 1975 amendments to the Securities Exchange Act of 1934. The Third Circuit, writing in 1973 in *Landy v. Federal Deposit Insurance Corporation,* 486 F.2d 139, *cert. denied,* 416 U.S. 960, 94 S.Ct. 1979, 40 L.Ed.2d 312 (1974), considered the related question of whether or not an implied federal cause of action existed for violation of stock exchange rules and said that, "Implication of such liability is a relatively recent and still evolving phenomenon." *Id.* at 164. The District Court for the Northern District of Texas in 1976 in *Lange v. H. Hentz & Co.,* 418 F.Supp. 1376, summarized the then current case law regarding implied civil liability for breach of stock exchange and NASD rules. After noting that the Seventh Circuit in *Buttrey v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 410 F.2d 135, *cert. denied,* 396 U.S. 838, 90 S.Ct. 98, 24 L.Ed.2d 88 (1969) had held liability could be implied from a breach of NYSE Rule 405, the court observed that:

> *Case development since Buttrey has been halting and fragmented,* with the courts torn between recognition of the need in particular fact situations to provide some remedy for the victimized investor and the need in other cases to allow for flexibility in applying a rule.... Rigid *per se* liability seems to have been rejected in favor of a liability framework based upon a more balanced view of the multifaceted nature of the broker-dealer-investor relationship.

*Lange,* 418 F.Supp. at 1381 (emphasis added). *See also* cases cited *id.* at n. 6. Since a private cause of action for violation of NASD rules was not clearly recognized before the 1975 amendments to the Securities Exchange Act of 1934, the case at bar is distinguishable from that confronting the Supreme Court in *Curran.*

The court is in agreement with the reasoning of those cases that have found Congress did not intend to create implied private causes of action for violations of NASD rules. Section 15A does not by its terms indicate a legislative intent to create a private remedy and there is simply no hint of such intent in the legislative history. *Klitzman v. Bache Halsey Stuart Shields, Inc.,* 499 F.Supp. 255, 259 (S.D.N.Y.1980). In contrast, §§ 9(e), 16(b) and 18 of the 1934 Act expressly create private rights of action, making it highly improbable that "Congress absentmindedly forgot to mention an intended private action." *Transamerica,* 444 U.S. at 20, 100 S.Ct. at 247 (*quoting Cannon v. University of Chicago,* 441 U.S. 677, 742, 99 S.Ct. 1946, 1981, 60 L.Ed.2d 560 (1979)). The statutory scheme, which provides for NASD discipline of its members and pervasive oversight of the NASD by the SEC, also suggests that Congress intended these means to be the exclusive means of enforcement. *Colman v. D.H. Blair & Co.,* 521 F.Supp. 646, 654 (S.D. N.Y.1981). Furthermore, the special focus of the NASD rules has been held to be professionalization of the securities industry rather than protection of the investor-public. *Lange,* 418 F.Supp. at 1382. The rules themselves are affirmatively and vaguely phrased in terms of what shall be instead of in terms of concrete proscriptions. *Id.* Implication of civil liability would also undermine the concept of self-regulation that is essential to the regulatory scheme and purpose of the 1934 Act: the industry might hesitate to establish ethical standards if its efforts incurred legal liability. *See, e.g., Nelson v. Hench,* 428 F.Supp. 411, 420 (D.Minn.1977). Finally, implication of a private remedy is likely to flood the judicial system with "garden variety" disputes between broker-dealers and investors and exclusive federal jurisdiction would prevent the investor from pursuing traditional state remedies. *Lange,* 418 F.Supp. at 1380.

For all of the reasons discussed above, the court holds that there is no cause of action under federal law against the NASD for its alleged failure to investigate, report and terminate its member Alstead, Strangis & Dempsey, Inc. The court therefore declines to exercise pendent jurisdiction over the state claims.

The complaint against defendant NASD will be dismissed.

Upon the foregoing,

IT IS ORDERED That defendant NASD's motion to dismiss the claims against it in the above-entitled actions for failure to state a claim for which relief can be granted be and the same hereby is in all things granted.

IT IS FURTHER ORDERED that, there being no just reason for delay, the Clerk enter judgment as follows:

IT IS ORDERED, ADJUDGED AND DECREED That the plaintiffs' complaints in the above-entitled actions based upon alleged violations of the Securities Exchange Act of 1934, 15 U.S.C. § 78a *et seq.*, against defendant National Association of Securities Dealers, Inc. are dismissed with prejudice.

IT IS FURTHER ORDERED, ADJUDGED AND DECREED That plaintiffs' complaints in the above-entitled actions, to the extent those complaints allege violations of state law, against defendant National Association of Securities Dealers, Inc. are dismissed for lack of jurisdiction.