Norman RICH et al., Plaintiffs,

v.

NEW YORK STOCK EXCHANGE, INC.,
et al., Defendants.

No. 73 Civ. 4642 (PNL).

United States District Court,
S. D. New York.

Feb. 3, 1981.

AMENDED OPINION AND ORDER

LEVAL, District Judge.

The New York Stock Exchange moves to dismiss plaintiffs' claims under § 6(b) of the Securities Exchange Act of 1934 for failure to state a claim upon which relief can be granted.

The complaint essentially charges the Stock Exchange with dereliction of its duty to supervise Weis Securities, Inc., and enforce Stock Exchange rules against Weis, with the alleged consequence that Weis was forced into liquidation and its clients, the plaintiff class, suffered losses.

The Stock Exchange argues that the recent decisions of the Supreme Court in *Touche Ross & Co. v. Redington*, 442 U.S. 560, 99 S.Ct. 2479, 61 L.Ed.2d 82 (1979) and *Transamerica Mortgage Advisors, Inc. v. Lewis*, 444 U.S. 11, 100 S.Ct. 242, 62 L.Ed.2d 146 (1979) command the conclusion that no private cause of action for damages is implied in § 6(b).

After lengthy consideration of this difficult question, I have concluded that the motion should be denied.

A private cause of action for damages against a national securities exchange was first found implicit in § 6(b) some 36 years ago in *Baird v. Franklin*, 141 F.2d 238 (2 Cir.), *cert. denied*, 323 U.S. 737, 65 S.Ct. 38, 89 L.Ed. 591 (1944). In that case, a panel of the Court of Appeals composed of Judges Swan, A. N. Hand and Clark concurred that "§ 6(b) places a duty on the Stock Exchange to enforce the rules ... prescribed by that section," and that the purpose of Congress, "to protect the general investing public," requires that "§ 6(b) must be construed as granting to injured investors individual causes of action to enforce the statutory duties imposed upon the exchanges." 141 F.2d at 244–45.

Since the *Baird* case, the existence of such an implied private right of action has been accepted as settled law, *see, e. g., Hochfelder v. Midwest Stock Exchange*, 503 F.2d 364 (7th Cir.) *cert. denied*, 419 U.S. 875, 95 S.Ct. 137, 42 L.Ed.2d 114 (1974); *Butterman v. Walston & Co.*, 387 F.2d 822

(7th Cir. 1967), *cert. denied*, 391 U.S. 913, 88 S.Ct. 1806, 20 L.Ed.2d 652 (1968); *Steinberg v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, [1973–74 Transfer Binder] CCH Fed. Sec.L.Rep. ¶ 94,599 (S.D.N.Y.1974); *Marbury Management, Inc. v. Kohn*, 373 F.Supp. 140, 142–43 (S.D.N.Y.1974); *Kroese v. New York Stock Exchange*, 227 F.Supp. 519 (S.D.N.Y.1964); *Pettit v. American Stock Exchange*, 217 F.Supp. 21 (S.D.N.Y. 1963). *Cf. Colonial Realty Corp. v. Bache & Co.*, 358 F.2d 178 (2 Cir.), *cert. denied*, 385 U.S. 817, 87 S.Ct. 40, 17 L.Ed.2d 56 (1966). In fact, in a prior procedure in this very case, on review of another judge's grant of summary judgment, the Court of Appeals reaffirmed the existence of a § 6(b) cause of action. *Rich v. New York Stock Exchange*, 522 F.2d 153 (2 Cir. 1975).

There can be no doubt that the Supreme Court's analysis in *Redington* and *Transamerica* suggests that the soil of the federal courtroom will be far less fertile and receptive in the future than in the past for growing implied private causes of action. But whether the Court intended by these decisions to chop down plants that took root 36 years ago and have grown freely ever since is another question. In my view the Stock Exchange reads into those decisions more drastic consequences than they intend.

What is most certain is that the recent Supreme Court cases do not abolish the implied private cause of action. For example, *Cannon v. University of Chicago*, 441 U.S. 677, 99 S.Ct. 1946, 60 L.Ed.2d 560 (1979), decided contemporaneously with the two securities cases, affirmed the existence of an implied unstated private cause of action to enforce Section 901(a) of Title IX of the Education Amendments of 1972. And *Transamerica*, while refusing to find an implied cause of action for damages under § 206 of the Investment Advisors Act, expressly affirmed the existence of an implied cause of action under § 215 for injunction, rescission or damages in the nature of restitution. 444 U.S. at 19, 100 S.Ct. at 247. All three 1979 cases reaffirmed the validity of the factors set forth in *Cort v. Ash*, 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975);

*i. e.*, (1) is the plaintiff " 'one of the class for whose *especial* benefit the statute was enacted' "; (2) what evidence is there of legislative intent; (3) is the implied action consistent with the underlying purposes of the legislative scheme; and (4) is the cause of action one traditionally relegated to state law and hence inappropriate as a basis for a federal cause of action? 422 U.S. at 78, 95 S.Ct. at 2088. These factors do not by any means exterminate the implied action.

Second, and perhaps more pertinent for this case, the Supreme Court suggested that the new adoption of "a stricter standard," *Redington*, 442 U.S. at 578, 99 S.Ct. at 2490, should not be seen as overturning longstanding jurisprudence. For example, "the 25-year-old acceptance by the lower federal courts of an implied action under § 10(b) [of the 1934 Act]" was set forth as adequate justification for the Supreme Court's "acquiesce[nce]." 442 U.S. at 577 n. 19, 99 S.Ct. at 2490. And the lack of "similar history of longstanding lower court interpretation" as to § 17(a) of the 1934 Act was cited in justification for the Court's negative conclusion. *Id.* Although the *Redington* opinion explicitly suggests disagreement *with the analysis* in *J. I. Case v. Borak*, 377 U.S. 426, 84 S.Ct. 1555, 12 L.Ed.2d 423 (1964), there is no suggestion that the implied action found in *Borak* may no longer exist.

The Court of Appeals recently observed, in the course of a similar analysis as to the continued existence of implied causes under the Commodity Exchange Act, "[T]he rumors about the death of the implied cause of action which have been circulating in the wake of these decisions . . . are exaggerated, at least as far as previously enacted statutes are concerned, and . . . the effect of the decisions is simply to emphasize that the ultimate touchstone is congressional intent and not judicial notions of what would constitute wise policy." *Leist v. Simplot*, 638 F.2d 283, at 316 (2 Cir. 1980).

"The ultimate question [being] one of [C]ongressional intent" *Redington*, 442 U.S. at 578, 99 S.Ct. at 2490, it is worth noting that the Court of Appeals in *Baird v.*

*Franklin* based its analysis on its perception of Congressional intent, in a manner that is not radically different from the analysis prescribed in *Cort v. Ash.*\* Judge Clark's opinion presciently answered *Cort's* first three questions in the affirmative. As to the fourth, it seems clear that actions to hold registered national stock exchanges to the performance of duties presented by federal law are not of the kind traditionally relegated to state law. See Note, *Exchange Liability under Section 6*, 78 Colum. L.Rev. 112, 124–133 (1978).

Thus the question posed seems quite capable of passing the *Cort* test·even if that test is applicable in its pure form. However, as I understand the Supreme Court's explanations, the pure *Cort* test governs the resolution of causes of action newly sought to be inferred. Where there is a long history of a well-settled, universally accepted implication of an unstated cause of action, I believe, for the reasons expressed above, the *Cort* test is at least modified, and perhaps overridden, by consideration for those long-standing traditions.

In short, I believe the Stock Exchange's brief addresses itself to the wrong question. It argues forcefully to the effect that if *Baird v. Franklin* were a new decision on direct review today before the Supreme Court, the High Court might well reverse. Rather, the question is whether the Court intends by its decisions in new areas to overturn nearly 40 years of established precedent. I do not think so.

A further difficulty in discarding the implied cause of action under § 6(b) arises from the interpretation of more recent Congressional action as to this statute.

Section 6 was reenacted with substantial revisions in 1975. At this time, Congress was unquestionably aware of the *Baird v. Franklin* heredity and of the strong jurisprudence throughout the securities laws, capped by the Supreme Court's *Borak* decision, acknowledging the existence of implied causes of action. As Judge Friendly noted in *Leist*, if one undertakes at all to interpret Congressional silence, the fairer reading must surely be that this silence, in the course of substantial other changes, must be viewed as at least an approving expectation that this well-entrenched jurisprudence would continue. See 638 F.2d at 317.

I recognize that the intent of Congress in passing the 1975 amendments is of little relevance for causes of action, like this, that arose earlier. Nonetheless it would be odd to conclude that the implied private cause of action under § 6(b) did not exist when everyone thought it did, but that it has now come to exist by interpretation of the 1975 amendments, just when its existence has come to be widely doubted.

The motion to dismiss the claim under § 6(b) is denied.

---

\* I do not deny that Judge Clark exercised greater liberality in divining Congress' intent in *Baird* than did Justice Rehnquist in *Redington*. Judge Clark for example gave short shrift to the maxim *expressio unius est exclusio alterius*, which is found so persuasive in the recent Supreme Court cases. This rule of interpretation has been honored equally in the breach and in the observance, depending on the result that has seemed desirable to the particular court at the particular time. Compare *Transamerica v. Lewis*, 444 U.S. at 21, 100 S.Ct. at 248, as to § 206, " 'Obviously, then, when Con- gress wished to provide a private damage remedy, it knew how to do so and did so expressly' " (quoting *Redington*), with *Transamerica v. Lewis*, 444 U.S. at 19, 100 S.Ct. at 247, "For these reasons we conclude that when Congress declared in § 215 that certain contracts are void, it intended that the customary legal incidents of voidness would follow, including the availability of a suit for rescission or for an injunction against continued operation of the contract, and for restitution." (Footnote omitted.)