Nicholas A. LACOVARA

v.

**MERRILL LYNCH, PIERCE, FENNER AND SMITH, INC. and Mid-America Commodity Exchange and Commodity Exchange, Inc.**

Civ. A. No. 81–4628.

United States District Court,
E.D. Pennsylvania.

Nov. 29, 1982.

Ian Stuart, Philadelphia, Pa., for plaintiff.

Abramson & Fox, Chicago, Ill., Stephen F. Ritner, Philadelphia, Pa., for Mid-America Commodity.

C. Clark Hodgson, Jr., Philadelphia, Pa., for Merrill Lynch.

Joseph A. Torregrossa, Philadelphia, Pa., for Commodity Exchange.

## MEMORANDUM

RAYMOND J. BRODERICK, District Judge.

In this diversity action, plaintiff Nicholas Lacovara ("Lacovara") alleges that the defendants were responsible for his losing money in transactions involving commodity futures. Plaintiff alleges that defendant Merrill Lynch, Pierce, Fenner, Smith, Inc. ("Merrill Lynch"), plaintiff's broker, engaged in negligent and fraudulent conduct and breached its fiduciary duty to Lacovara. Plaintiff further alleges, apparently upon a theory of respondeat superior as well as Section 6 of the Securities Exchange Act of 1934 (the "Act"), 15 U.S.C. § 78a, *et. seq.*, that defendant Mid-America Commodity Exchange ("Mid-America") failed to properly supervise Merrill Lynch and that Mid-America is therefore liable to plaintiff for breach of fiduciary duty. Mid-America has filed a motion to dismiss contending that this Court lacks personal jurisdiction over it, that it is not a stock exchange subject to the Securities Exchange Act, and that Section 6 of the Act does not allow plaintiff a private right of action. For the reasons hereinafter set forth, the Court will grant Mid-America's motion and dismiss plaintiff's complaint as to defendant Mid-America.

Mid-America is a commodity contract market licensed by the Commodity Futures Trading Commission ("CFTC") pursuant to the Commodity Exchange Act, 7 U.S.C. § 1, *et seq.* It is an Illinois not-for-profit corporation founded in 1880, with its principal place of business in Chicago. Mid-America is not incorporated or registered to do business in any state other than Illinois. It has not consented to personal jurisdiction in any state other than Illinois and has not appointed an agent in Pennsylvania to accept service of process. At Chicago, Mid-America maintains its executive offices as well as the trading floor of its exchange. All of Mid-America's trading in commodity futures takes place on the floor of this exchange, as does Mid-America's surveillance of its activities, any disciplinary proceedings against its members, and direct CFTC regulation of the exchange. (Affidavit of Mary Ann Andersen, vice president and corporate secretary of Mid-America, September 30, 1981). Merrill Lynch is one of a number of brokerage firms whose individual members belong to the Mid-America Exchange. Mid-America acts only as a clearing house for its members when they seek to buy and sell commodity futures through the exchange. For example, if a Pennsylvania customer of Merrill Lynch seeks to purchase 10 bushels of wheat at $50 for delivery at the end of November, 1982 ("November wheat"), Merrill Lynch's branch office in Pennsylvania contacts the Merrill Lynch office in Chicago and transmits the order. The Chicago office then contacts Merrill Lynch employees at the Mid-America exchange and a Merrill Lynch clerk writes up a floor order, time stamps it, and takes the order to the trading pit, where it is given to a licensed floor broker, an independent contractor who works for Merrill Lynch and others, depending on the specific transaction. The floor broker is a member of the Mid-America exchange. He buys the wheat future at such time as the market reaches the $5 per bushel price specified in the order. The completed order is returned to Merrill Lynch's floor desk at the exchange and time stamped. The fulfilled order is then confirmed at Merrill Lynch's Chicago office and then this news is sent to the Merrill Lynch branch in Pennsylvania, which subsequently informs the customer.

As the procedure heretofore described shows, Mid-America does no trading with the customer in Pennsylvania. Thus, under the facts of this case as alleged in plaintiff's complaint, Mid-America has done no business with the plaintiff and has done nothing at all in Pennsylvania. When faced with a motion to dismiss for lack of personal jurisdiction filed pursuant to Fed.R. Civ.P. 12(b)(2), a plaintiff must do more than merely allege that jurisdiction exists. He must carry his burden of establishing facts in support of personal jurisdiction.

See Donovan v. Division 788, Amalgamated Transit, 535 F.Supp. 61, 62 (E.D.Pa.1982). Plaintiff has not done this but merely has alleged that jurisdiction exists within the meaning of the Pennsylvania Long-Arm Statute, 42 Pa.C.S.A. § 5301, 5322, et seq. Plaintiff has filed no affidavits seeking to establish the facts necessary to confer jurisdiction and has not responded to defendant's affidavits. Thus, the affidavits of Mid-America are uncontroverted and may be taken as true. See Whalen v. Walt Disney World, 274 Pa.Super. 246, 418 A.2d 389, 393 (1980).

The Pennsylvania Long-Arm Statute, 42 Pa.C.S.A. § 5322(b) provides

> the jurisdiction of the tribunals of this Commonwealth shall extend . . . to the fullest extent allowed under the Constitution of the United States and may be based on the most minimum contact with this Commonwealth allowed under the Constitution. of the United States.

Section 5322(a)(4) of the statute confers personal jurisdiction where the defendant has caused "harm or tortious injury in this Commonwealth by an act or omission outside this Commonwealth." However, the due process clause of the Constitution requires that the defendant possess sufficient minimum contact with the forum state such that the Court's exercise of personal jurisdiction does not offend the due process clause. See Jacobs v. Lakewood Aircraft Service, Inc., 493 F.Supp. 46 (E.D.Pa.1980); Watson McDaniel Co. v. National Pump & Control, Inc., 493 F.Supp. 18 (E.D.Pa.1979).

The basic standards for evaluating whether the exercise of due process jurisdiction comports with due process are set forth in International Shoe Co. v. Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945) and its progeny. International Shoe held that to satisfy due process, the defendant must have certain "minimum contacts" with the forum state such that the maintenance of the suit does not offend "traditional notions of fair play and substantial justice." 326 U.S. at 316, 66 S.Ct. at 158.

International Shoe, as refined by subsequent cases, has resulted in Court use of a three-part inquiry to gauge whether the defendant has minimum contact with the forum state. The Court must ask:

1. Has the defendant purposely availed itself of the privilege of acting within the forum state, thus invoking the benefit and protection of its laws? See Hanson v. Denckla, 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958).

2. Did the cause of action arise from defendant's activities within the forum state?

3. Do the defendants' acts have a substantial enough connection with the forum state to make jurisdiction over the defendant reasonable?

See also Bev-Mark, Inc. v. Summerfield GMC Truck Co., 268 Pa.Super. 74, 79, 407 A.2d 443, 445 (1971); Proctor and Schwartz, Inc. v. Cleveland Lumber Co., 228 Pa.Super. 12, 323 A.2d 11 (1974).

Recent Supreme Court cases such as Shaffer v. Heitner, 433 U.S. 186, 97 S.Ct. 2569, 53 L.Ed.2d 683 (1977), Kulko v. Superior Court, 436 U.S. 84, 98 S.Ct. 1690, 56 L.Ed.2d 132 (1979), Rush v. Savchuk, 444 U.S. 320, 100 S.Ct. 571, 62 L.Ed.2d 516 (1980) and World-Wide Volkswagen. v. Woodson, 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980) have further refined the basic minimum contacts test. Shaffer held that the exercise of quasi in rem jurisdiction was subject to the due process constraints of the minimum contacts test set forth in International Shoe. Kulko held that long-arm jurisdiction based on an act outside the forum causing impact within the forum was limited to cases involving products liability and tortious conduct. World-Wide Volkswagen stated that to justify an exercise of jurisdiction under a long-arm statute, the "defendant's conduct and connection with the forum State [must be] such that he should reasonably anticipate being haled into court there." 444 U.S. at 292, 100 S.Ct. at 564.

Assessing Mid-America's activities, this. Court finds that Mid-America's contacts with Pennsylvania do not meet the

**604**

Constitutional minimum. Under these circumstances, this Court's exercise of personal jurisdiction over Mid-America would offend the due process clause. Mid-America has not invoked the benefits and protections of the laws of Pennsylvania; plaintiff's cause of action did not arise from any of Mid-America's actions within Pennsylvania. Furthermore, Mid-America's total contact with Pennsylvania is so insignificant that it would be grossly unreasonable for this Court to attempt to exercise personal jurisdiction over Mid-America.

As heretofore noted, Mid-America is not incorporated in Pennsylvania and does not maintain an office in the Commonwealth. Neither does it maintain a phone listing, mailing address, or bank account in the state. Mid-America has no agents or employees conducting business in the Commonwealth. (Merrill Lynch's Pennsylvania employees are not Mid-America's agents; *see* p. 602, *supra*). Mid-America owns no real property in Pennsylvania, sells no goods or services in the state, and pays no tax in Pennsylvania. Only three of the 1,205 member brokers of the exchange reside in Pennsylvania. Occasionally, Mid-America places advertisements in national publications such as the *Wall Street Journal,* which are circulated in Pennsylvania. (Andersen Affidavit, *supra*). The record clearly shows that Mid-America has at most only tangential contact with Pennsylvania. Under these circumstances, Mid-America is not within the personal jurisdiction of this Court.

Furthermore, even if this Court were to have found that personal jurisdiction exists, plaintiff has not stated a cause of action against Mid-America. Plaintiff's complaint alleges that Mid-America violated Section 6 of the Securities Exchange Act of 1934, 15 U.S.C. § 78f because it failed to properly supervise the activities of its members (the Merrill Lynch employees who were members of Mid-America Exchange). However, the uncontroverted record in this case shows that Mid-America is not a securities exchange within the meaning of 15 U.S.C. § 78c but is a commodity exchange (or "contract market") within the meaning of the Commodities Exchange Act, 7 U.S.C.

§ 1, *et seq.* (Andersen affidavit, *supra*). Thus, Section 6 of the Securities Exchange Act of 1934 is inapplicable to Mid-America.

Even if Mid-America were a securities exchange subject to the Securities Exchange Act, plaintiff would not have a private right of action pursuant to section 6 of the Act which requires that securities exchanges properly supervise their members. In *Walck v. American Stock Exchange, Inc.* 687 F.2d 778, 1982 Fed.Sec.L.Rep. (CCH) ¶ 98,789 (3rd Cir., 1982), the Third Circuit held that "Congress did not create private rights of action by implication in § 6 ... neither Congress nor the exchanges implicitly authorized private actions against an Exchange for failure to enforce its own rules...." 687 F.2d at 780, 1982 Fed.Sec.L.Rep. (CCH) at 94,044. Also, there is no common law cause of action against an exchange for failure to supervise its members. *See Lank v. The New York Stock Exchange,* 405 F.Supp. 1031 (S.D.N.Y.1975); *New York Stock Exchange v. Pickard and Co.,* 282 A.2d 651 (Del.Ch.1971). Thus, plaintiff has not pleaded a claim upon which relief may be granted.

For all of the foregoing reasons heretofore noted, the Court will enter an Order dismissing plaintiff's complaint as to Mid-America.