**Sudhir KAKAR, Plaintiff,**

v.

**CHICAGO BOARD OPTIONS EXCHANGE, INC., Defendant.**

**No. 87 Civ. 2521 (RWS).**

United States District Court, S.D. New York.

March 7, 1988.

Sudhir Kakar, pro se.

Mound, Cotton & Wollan, New York City, for defendant; Michael R. Koblenz, Philip C. Silverberg, of counsel.

## OPINION

SWEET, District Judge.

Defendant Chicago Board Options Exchange, Inc. ("CBOE") has moved under Fed.R.Civ.P. 56 for an order granting summary judgment in its favor and dismissing the complaint of *pro se* plaintiff Sudhir Kakar ("Kakar"). Upon the facts and conclusions set forth below, summary judgment is granted and the complaint is dismissed.

*Facts*

This action arises out of a loss that Kakar incurred while selling (writing) Standard & Poor Index put options ("OEX options") on the CBOE. A "put option" obligates the seller (writer) to buy shares of the underlying security at a stated price (exercise price) if the buyer (holder) of the option decides to exercise the option prior to its expiration date. The particular transactions that form the basis of Kakar's complaint are the following: On December 31, 1984, Kakar sold six OEX options with a strike price of 165 and an expiration date of January 1985 ("OEX Jan 165 options") at $1.75 for a total price of $998.05. On January 3, 1985, Kakar sold an additional three OEX Jan 165 options at $2.75 for a total

price of $782.46. On January 4, 1985, the holders of some 1,231 OEX Jan 165 options exercised their options, and Kakar was assigned nine OEX Jan 165 option contracts. Because the price of S & P Index securities had fallen to 161 and Kakar was obligated to buy the securities at 165, he suffered a gross loss of $3,704.10 when the options were exercised. Thus, his net loss on the three transactions was $1,923.59.[1]

On January 8, 1985, Kakar sent a letter to the CBOE inquiring whether some of the holders of OEX Jan 165 options had exercised their options after the close of trading, 4:10 pm, on January 4. He informed the CBOE that if the options that were assigned to him had been exercised after 4:10 pm on January 4, he would not accept the trade and would "seek ... compensatory and punitive damages for market manipulation." On February 11, 1985, the CBOE responded to Kakar's inquiry with a letter stating that there had been no exercise notices posted after 4:10 pm on January 4. However, in a letter dated May 21, 1985, the CBOE informed Kakar that it had "discovered that one exercise notice for 5 OEX Jan 165 puts was submitted after the close of trading on January 4." The CBOE also informed Kakar that "[a]ppropriate action has been taken with regard to this violation."

Kakar commenced this action in March 1987 by filing a "Notice of Claim" in the Civil Court of the City of New York, Small Claims Part, seeking damages in the amount of $1,933.67 for the CBOE's alleged negligence. Thereafter, the CBOE removed the action to this court.

*Summary Judgment*

*Pro se* litigants defending summary judgment motions enjoy special latitude. *Mount v. Book-of-the-Month Club, Inc.,* 555 F.2d 1108, 1112 (2d Cir.1977). In order to grant summary judgment, this court must determine that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(c). The court's responsibility is not to resolve disputed is-

---

1. In his submissions to the court, Kakar miscalculates a net loss of $1,933.67.

sues of fact, *Knight v. U.S. Fire Ins. Co.*, 804 F.2d 9, 11 (2d Cir.1986), *cert. denied,* — U.S. ——, 107 S.Ct. 1570, 94 L.Ed.2d 762 (1987), but to determine whether there are any factual issues to be tried, while resolving ambiguities and drawing inferences against the moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 2509–11, 91 L.Ed.2d 202 (1986); *Eastway Constr. Corp. v. City of New York*, 762 F.2d 243, 249 (2d Cir. 1985). Summary judgment enables a court to "streamline the process for terminating frivolous claims and to concentrate its resources on meritorious litigation." *Knight v. U.S. Fire*, 804 F.2d at 12.

*Exchange Liability for Failure to Enforce its Own Rules*

■ Section 27 of the Securities Exchange Act of 1934 (the "Act"), 15 U.S.C. § 78aa (1981), grants federal courts "exclusive jurisdiction of violations of [the Act] or the rules and regulations thereunder, and of all suits in equity and actions at law brought to enforce any liability or duty created by [the Act] or the rules and regulations thereunder." Although Kakar's Notice of Claim states a claim "to recover monies arising out of the negligence of" the CBOE, the gravamen of his complaint is the CBOE's alleged failure to enforce its own rules, namely, CBOE Rule 11.1 which requires members of the exchange to submit all exercise notices with respect to index option contracts by 4:10 p.m. Thus, this case raises the question whether an investor has an implied right of action for damages against a registered exchange under § 6 of the Act, 15 U.S.C. § 78f (1981), based on the failure of the exchange to enforce its own rules.[2]

In *Baird v. Franklin*, 141 F.2d 238 (2d Cir.), *cert. denied*, 323 U.S. 737, 65 S.Ct. 38, 89 L.Ed. 591 (1944), the Court of Appeals for this Circuit recognized the duty of the New York Stock Exchange imposed by § 6(b) "to investigate the dealings and the financial conditions of the members and to suspend or expel members who it had reason to believe had been guilty of conduct inconsistent with just and equitable principles of trade." *Baird v. Franklin*, 141 F.2d at 239. Although the Court found that any failing on the part of the exchange had not been the proximate cause of the plaintiff's losses, the Court recognized that the exchange might be liable to private investors for a breach of this duty. Relying on *Baird*, courts of this and other circuits have recognized the possibility of inferring a private right of action under § 6 of the Act for the failure of an exchange to enforce its own rules against a member. *See, e.g., Rich v. New York Stock Exchange*, 509 F.Supp. 87 (S.D.N.Y. 1981) (citing cases).

More recently, courts have reexamined the availability of an implied right of action under § 6 in light of the 1975 amendments to the Act ("1975 Amendments") and recent Supreme Court decisions, beginning with *Cort v. Ash*, 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975), that have established strict standards to guide a federal court's inference of a private remedy for damages. In *Walck v. American Stock Exchange, Inc.*, 687 F.2d 778 (3d Cir.1982), *cert. denied*, 461 U.S. 942, 103 S.Ct. 2118, 77 L.Ed.2d 1300 (1983), the Third Circuit rejected the plaintiff investor's claim that the exchange's failure to enforce several of its rules against an errant member broker gave rise to an implied right of action under § 6 to recover damages from the exchange. After carefully analyzing the statute under the factors set forth in *Cort v. Ash* and considering the 1975 Amendments which reinforced the system of self-regulation by registered exchanges and expanded the Securities Exchange Commission's authority to supervise exchanges, *see* § 19(g),

---

**2.** Section 6(b)(1), 15 U.S.C. § 78f(b)(1) (1981), as amended, states:

(b) An exchange shall not be registered as a national securities exchange unless the Commission determines that—

(1) Such exchange is so organized and has the capacity to be able to carry out the purposes of this chapter and to comply, and (sub-ject to any rule or order of the Commission pursuant to section 78q(d) or 78s(g)(2) of this title) to enforce compliance by its members and persons associated with its members, with the provisions of this chapter, the rules and regulations thereunder, and the rules of the exchange.

15 U.S.C. § 78s(g), the Court concluded that "application of the *Cort v. Ash* standards demonstrates a clear congressional intent not to create a private damages remedy in § 6." *Walck v. American Stock Exchange,* 687 F.2d at 786.

In *Brawer v. Options Clearing Corp.,* 807 F.2d 297 (2d Cir.1986), *cert. denied,* —— U.S. ——, 108 S.Ct. 76, 98 L.Ed.2d 39 (1987), the Second Circuit considered the availability of a private right of action under § 6 for an exchange's failure to *comply* with its own rules. There the plaintiff alleged that the American Stock Exchange and the Options Clearing Corporation had failed to comply with a rule that provided for adjustments to option prices in response to changes in the market for an underlying security caused by such events as a reorganization or recapitalization. The district court dismissed the complaint on the grounds that the Act does not create a private right of action for the failure of an exchange or a clearing house to comply with or enforce its own rules. *See Brawer v. Options Clearing Corp.,* 633 F.Supp. 1254, 1260–62 (S.D.N.Y.1986). Without reaching the merits of the district court's *Cort v. Ash* analysis, however, the Second Circuit affirmed the dismissal of the complaint on alternate grounds, holding that "a private cause of action against an exchange or a clearing house for failure to comply with one of its rules which requires an exercise of discretion, *if one exists at all,* may be brought only if it is premised upon allegations of fraud or bad faith." [3] *Brawer v. Options Clearing Corp.,* 807 F.2d at 299 (emphasis added). In erecting a pleading hurdle to a claim under § 6, the Second Circuit expressed no opinion on whether *Baird* remains good law after the 1975 Amendments and recent Supreme Court decisions. *Id.* at 299 n. 2.

Thus, the Court of Appeals left unresolved a direct conflict between two district courts in this Circuit on the precise issue before this court. *Compare Brawers v. Options Clearing Corp.,* 633 F.Supp. 1254 (Stanton, J.) (*Baird* no longer remains good law), *with Rich v. New York Stock Exchange,* 509 F.Supp. 87 (Leval, J.) (private cause of action under § 6 recognized in *Baird* still exists). In *Brawer,* Judge Stanton reassessed the grounds for the implied right of action against exchanges provided in *Baird.* After analyzing the 1975 Amendments to the Act, Judge Stanton noted that Congress had "restructured § 6, added new §§ 17A and 19(g), and strengthened the role of the SEC in overseeing the activities of SRO's to ensure that they act in the public interest." *Brawer v. Options Clearing Corp.,* 633 F.Supp. at 1258. Thus, he concluded that Congress had recognized and addressed the concerns expressed in *Baird* and had purposefully enacted a statutory scheme that did not "create compensatory sanctions against a SRO [self-regulatory organization] for failure to enforce its rules, ..., but instead [provided] remedial measures with enforcement vested in the SEC." *Id.* at 1260.

Judge Stanton also analyzed whether a private right of action should be inferred from the 1975 Amendments under the four factor test announced in *Cort v. Ash,* namely, whether (a) plaintiff is a member of a class for whose special benefit the statute was enacted; (b) there is any indication of congressional intent to create or deny such a remedy; (c) the implication of the remedy is consistent with the underlying purposes of the legislative scheme and (d) the cause of action is one traditionally relegated to state law. *Cort v. Ash,* 422 U.S. at 78, 95 S.Ct. at 2087. Judge Stanton recognized that the 1975 Amendments were enacted for the protection of investors generally, but he concluded that both the legislative intent behind the Amendments and the purposes of the legislative scheme weighed against the inference of a

---

**3.** The Court culled the bad faith standard from its own line of cases requiring a showing of bad faith to sustain claims brought against exchanges under § 5a(8) of the Commodities Exchange Act, 7 U.S.C. § 7a(8) (1981), for failure to enforce compliance with certain exchange rules. *See Ryder Energy Distribution Corp. v. Merrill Lynch Commodities Inc.,* 748 F.2d 774, 780 (2d Cir.1984); *Sam Wong & Son, Inc. v. New York Mercantile Exchange,* 735 F.2d 653, 670 (2d Cir.1984).

private right of action against exchanges under § 6.

In *Rich v. New York Stock Exchange,* Judge Leval took a different view of both the 1975 Amendments and the applicability of *Cort v. Ash* to a legal remedy that had first been inferred by this Circuit almost forty years ago. Although he found the remedy announced in *Baird* "quite capable of passing the *Cort* test," he stated that, in any event, consideration for long-standing traditions overrode the *Cort* test, particularly where "there is a long history of a well-settled, universally accepted implication of an unstated cause of action." *Rich v. New York Stock Exchange,* 509 F.Supp. at 89. Judge Leval also read the failure of the 1975 Amendments explicitly to abrogate *Baird* as "at least an approving expectation that this well-entrenched jurisprudence would continue." *Id.*

The district court's opinion in *Brawer* observed that "every decision in this Circuit following *Baird* [including *Rich v. New York Stock Exchange*] was decided on facts existing prior to the 1975 Amendments to the Exchange Act." *Brawer v. Options Clearing Corp.,* 633 F.Supp. at 1258. The Supreme Court's decision in *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Curran,* 456 U.S. 353, 102 S.Ct. 1825, 72 L.Ed.2d 182 (1982), provides guidance as to whether the private remedy first implied in *Baird* should be preserved following the 1975 Amendments. In *Curran,* the Court held that where "Congress acts in a statutory context in which an implied private remedy has already been recognized by the courts, ... the question ... is whether Congress intended to preserve the pre-existing remedy." *Curran,* 456 U.S. at 378–79, 102 S.Ct. at 1839. Examining the legislative history to the 1974 amendments to the Commodity Exchange Act ("CEA"), the Court found specific evidence suggesting that Congress was aware of and intended to preserve private remedies for investors against exchanges for violations of § 5a(8) of the CEA, 7 U.S.C. § 7a(8), which requires exchanges to enforce their own rules. *Id.* at 382–88, 102 S.Ct. at 1841–1844.

By contrast, as the district court in *Brawer* and the Third Circuit in *Walck* found, there is no "affirmative indication in the records of the extensive seven-year study and evaluation of the Exchange Act that led to the 1975 Amendments that Congress was even aware of—much less intended to preserve—the remedies inferred" in *Baird. Walck v. American Stock Exchange,* 687 F.2d at 787 & n. 12; *see also Brawer v. Options Clearing Corp.,* 633 F.Supp. at 1262. Moreover, in *Walck* the Third Circuit also found that prior to the 1975 Amendments *Baird* was the only appellate decision that had expressly recognized a private remedy under § 6 of the Act and that only one other reported decision, *Pettit v. American Stock Exchange,* 217 F.Supp. 21 (S.D.N.Y.1963), had permitted a plaintiff to go to trial on a § 6 claim. *Walck v. American Stock Exchange,* 687 F.2d at 787.

The Third Circuit and Judge Stanton concluded that, under the examination of the 1975 Amendments to the Act required by the Supreme Court in *Curran,* an implied right of action under § 6 cannot stand. These conclusions will be applied here to bar Kakar's claim.

■ However, even if such a remedy could be inferred under § 6 for certain exchange rules, it would still not be appropriate to infer a remedy in this case. As Judge Friendly held in an analogous case involving the civil liability of an exchange member for violation of exchange rules, whether a court should infer a private damages remedy depends, *inter alia,* on the "nature of the particular rule and its place in the regulatory scheme." *Colonial Realty Corp. v. Bache & Co.,* 358 F.2d 178, 182 (2d Cir.1966). The Second Circuit's use of the phrase "if one exists at all" in *Brawer* to describe the availability of a remedy for an exchange rule violation suggests, at minimum, that a district court's first task is to examine the specific rule on which the plaintiff's claim is based. Examination of the particular exchange rule at issue here compels the conclusion that Kakar's claim for damages must fail.

CBOE Rule 11.1 provides that "an outstanding option contract may be exercised during the time period specified in the Rules of the Clearing Corporation by the tender to the Clearing Corporation of an exercise notice in accordance with the Rules of the Clearing Corporation." The CBOE's Official Interpretation of Rule 11.1 provides that "with respect to index option contracts ... a memorandum to exercise any contract issued or to be issued in a customer ... account at the Clearing Corporation must be received or prepared by the [member] no later than [4:10 pm] ..." The Official Interpretation also provides that the "failure of any member to follow the procedures and meet the deadlines in this section .02 may result in the assessment of fines in an amount determined by the [CBOE] and may be referred to the Business Conduct Committee."

The CBOE rule at issue here does not pertain to, for example, net capital requirements such that the CBOE's failure to enforce a member's compliance could result in the member's liquidation, thereby causing financial loss to its clients. *Cf. Rich v. New York Stock Exchange*, 522 F.2d 153 (2d Cir.1975). This is not a case where the exchange's failure to take some discretionary action under one of its rules has had an adverse financial impact on an investor. *Cf. Brawer v. Options Clearing Corp.*, 807 F.2d 297. Further, this case does not involve exchange rules that proscribe fraud or impose standards of just and fair dealing.

On the contrary, CBOE Rule 11.1 is an administrative provision that establishes time limits for the submission of option exercise notices. Rule 11.1 does not require the CBOE to invalidate and rescind any option contracts for which the requisite documentation is submitted after the deadline. Moreover, the rule does not impair the ability to exercise index option contracts after 4:10 pm; in fact, Rule 801 of the Options Clearing Corporation ("OCC"), which governs the exercise of option contracts by CBOE members, *see* CBOE Rule 6.50, provides that an option contract may be exercised and tendered to the OCC between 10:00 am and 8:00 pm. Thus, even when a member of the CBOE fails to submit the documentation necessary to exercise an option contract before 4:10 pm, the OCC rules provide that the option can still be exercised so long as the required documentation is received before 8:00 pm. The purpose of CBOE Rule 11.1 is to establish time limits to facilitate an orderly trading process, and, toward that end, the rule grants the CBOE discretion to sanction non-complying members. However, there is nothing in the rule that suggests it was created to protect the welfare of investors. In sum, there is no basis for a finding that CBOE Rule 11.1 is the type of rule that "amounts to a substitute for regulation by the SEC itself." *See Colonial Realty Corp. v. Bache & Co.*, 358 F.2d at 182 & n. 4.

In addition, here it appears that the CBOE did take some action to enforce compliance with Rule 11.1. Although neither the CBOE's May 21, 1985 letter to Kakar nor the record reveals what action was taken, there does not appear to be any action short of rescinding all 1,231 options exercised on January 4, 1985 that could remedy the loss suffered by Kakar. As the May 21 letter explained, because the OCC clears "all exercises and assignments ... on a random basis, and because those member firms selected then assign options on a random basis, it cannot be shown that the 5 options exercised after the close on January 5 were a portion of those" that were assigned to Kakar. There is nothing in Rule 11.1 to suggest that the CBOE should enforce the rule by rescinding all transactions on a given day because of the untimeliness of a very few.

Under the circumstances of this case, although as one of many sellers of OEX Jan 165 options who were assigned contracts on January 5, 1985, Kakar may have incurred a loss due to the submission of an exercise notice after the deadline prescribed by CBOE Rule 11.1, his loss does not give rise to a claim for damages under § 6 of the Act. Accordingly, upon the findings and conclusions set forth above, there are no triable issues of fact, and the CBOE is entitled to judgment as a matter of law.

The motion for summary judgment is granted.

IT IS SO ORDERED.