**Clark E. NISS, Plaintiff,**

v.

**NATIONAL ASSOCIATION OF SECURITIES DEALERS, INC., et al., Defendants.**

**No. 95–3883–R (JFS).**

United States District Court, S.D. California.

Nov. 17, 1997.

Clark E. Niss, pro se.*

F. Joseph Warin, Douglas R. Cox, Daniel W. Nelson, Jeffrey L. Mengoli, Gibson, Dunn & Crutcher, LLP, San Diego, CA, (John J. Flood, Associate General Counsel, National Association of Securities Dealers, Inc., Washington, DC, of counsel), for Defendants.

## ORDER GRANTING DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT

RHOADES, District Judge.

### I. Overview

Defendant National Association of Securities Dealers, Inc. ("NASD") has filed a Motion to Dismiss Plaintiff's First Amended Complaint. For the reasons stated below, the Court grants the Motion.

### II. Background

Plaintiff Clark E. Niss purchased stock in several companies on the advice of La Jolla Securities Corporation ("LJSC") and one of its employees, Marvin J. Susemihl. Plaintiff lost money on these investments. Plaintiff then sued LJSC and Susemihl, alleging that they caused his losses by breaching their fiduciary duties to him. Plaintiff also sued twelve other Defendants, including the NASD. The NASD is the only remaining Defendant in this case, however, because the others settled with Plaintiff.

The NASD is a nonprofit Delaware corporation registered with the Securities and Exchange Commission ("SEC") as a national securities association. *In re NASD, Inc.,* 5 S.E.C. 627 (1939). It is, as its name implies, an association of securities dealers. It has thousands of broker/dealer members, one of which was LJSC. The NASD regulates the over-the-counter securities market pursuant to congressional authorization.

Like national securities exchanges, the NASD is a self-regulatory organization as defined in 15 U.S.C. § 78c(a)(26). It is, how-

---

* Plaintiff was pro se at the time the order was filed. Plaintiff became pro se after his lawyer died. However, his lawyer died after the motion was already fully briefed, and the Court did not hear oral argument on the matter. Thus, Plaintiff himself did absolutely no work on his motion. His lawyer did it all. If you need the lawyer's address, etc., please do not hesitate to call.

**1304**

ever, heavily regulated by the SEC and the Securities Exchange Act of 1934 ("the Exchange Act"). The NASD must comply with its own rules, the SEC's rules, and the Exchange Act. 15 U.S.C. § 78s(g). If the NASD does not so comply, the SEC may suspend or revoke the NASD's registration, censure or limit the NASD's activities, or impose other penalties. 15 U.S.C. § 78s(h)(1).

Plaintiff alleges six causes of action against the NASD. First, Plaintiff alleges an implied cause of action under section 15A of the Exchange Act, 15 U.S.C. § 78o–3, claiming that the NASD breached its statutory duty to regulate its members properly.[1] Second, Plaintiff alleges that the NASD breached contracts to which Plaintiff was a third-party beneficiary. Plaintiff's other four causes of action allege state-law negligence claims. The basic thrust of all of Plaintiff's claims is that the NASD failed adequately to supervise LJSC and therefore failed to prevent Plaintiff's losses.

## III. Discussion

On May 16, 1997 the NASD filed a Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), for failure to state claims on which the Court can grant relief. The NASD argues that the Court should dismiss Plaintiff's statutory implied cause of action because section 15A does not create a private right of action. The NASD argues that the Court should dismiss the remaining claims because they are nothing more than disguised versions of the first claim.

As discussed below, the Court agrees with the NASD in both respects and will dismiss the First Amended Complaint.

### A. Legal Standards Governing Motions To Dismiss

The Court must deny Defendant's Motion to Dismiss for failure to state a claim unless

it appears that Plaintiff cannot prove any set of facts that would entitle him to relief. *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *Fidelity Fin. Corp. v. Federal Home Loan Bank,* 792 F.2d 1432, 1435 (9th Cir.1986), *cert. denied,* 479 U.S. 1064, 107 S.Ct. 949, 93 L.Ed.2d 998 (1987). The Court takes all material allegations in the Complaint as true and construes them in the light most favorable to Plaintiff. *NL Indus., Inc. v. Kaplan,* 792 F.2d 896, 898 (9th Cir.1986).

### B. Plaintiff's First Cause Of Action

Plaintiff predicates his first cause of action on section 15A of the Exchange Act. Section 15A provides that an association of securities dealers shall not be registered unless it maintains rules that promote fair trade and rules that require its members to abide by its fair-trade rules. Section 15A also requires that the association have the capability to compel its members to comply with its rules. Plaintiff argues that section 15A gives rise to a private right of action if an association fails to supervise its members properly.

Defendant disputes this contention. Defendant cites numerous cases that have held that section 15A (and the closely analogous section 6, which applies to securities exchanges) does not create a private right of action for a violation of a self-regulatory organization's own rules. Plaintiff attempts to distinguish these cases by arguing that his cause of action rests not on a violation of the NASD's own rules, but on a violation of its statutory duties under section 15A.

As discussed below, even assuming that Plaintiff has made a viable distinction,[2] no private right of action exists under section 15A for a violation of the NASD's statutory duties.

---

1. Actually, Plaintiff facially premises his first cause of action on section 6 of the Exchange Act, 15 U.S.C. § 78f. That section, however, applies only to national securities exchanges, not securities associations such as the NASD. Section 15A, an analogous provision, applies to the NASD. Plaintiff recognizes this error in his Opposition Brief. The Court will treat Plaintiff's cause of action as premised on section 15A.

2. The Court doubts that Plaintiff has made a viable distinction. 15 U.S.C. § 78s(g) requires the NASD to comply with its own rules. Thus, a violation of the NASD's own rules is necessarily a violation of its statutory duties.

### 1. Whether An Implied Right Of Action Exists Under Section 15A For The NASD's Violation Of Its Statutory Duties

■ Section 15A does not create a private right of action expressly. It does so, if at all, only by implication. In determining whether a federal statute creates an implied right of action, the Court utilizes the four-factor test set forth in *Cort v. Ash,* 422 U.S. 66, 78, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975). That test asks first, whether the statute creates a federal right for a class to which Plaintiff belongs; second, whether Congress intended to create a private right of action; third, whether inferring a private right of action would be consistent with the underlying legislative scheme; and fourth, whether the cause of action traditionally belongs to state law so that it would be inappropriate to infer a cause of action based solely on federal law. *Id.* Although the Court must examine section 15A "through the lens of the *Cort* test," it "plac[es] special emphasis on ascertaining Congress's intent...." *Federation of African Am. Contractors v. City of Oakland,* 96 F.3d 1204, 1211 (9th Cir.1996).

■ In *Jablon v. Dean Witter & Co.,* 614 F.2d 677, 681 (9th Cir.1980), the Ninth Circuit considered whether section 15A creates a private right of action for a violation of the NASD's own rules. In doing so, the Ninth Circuit provided reasoning that directly applies to the question of whether a private right of action exists for the NASD's violation of its statutory duties.

Analyzing the first *Cort* factor (whether the statute creates a federal right for a class to which Plaintiff belongs), the Ninth Circuit noted that section 15A "does not in itself imply that Congress intended to create a private action. Its language ... 'neither confers rights on private parties nor proscribes conduct as unlawful.'" *Id.* (quoting *Touche Ross & Co. v. Redington,* 442 U.S. 560, 569, 99 S.Ct. 2479, 61 L.Ed.2d 82 (1979) (noting that where private rights of action are implied under the Exchange Act, the statutory sections at least prohibit conduct or expressly create federal rights)). Thus, the first *Cort* factor disfavors Plaintiff's argument.

Proceeding to the second prong of the *Cort* test (whether Congress intended to create a private remedy), the Ninth Circuit noted that "sections 9(e), 16(b), and 18 of the Securities Exchange Act explicitly provide private rights of action." *Id.* Given these explicit provisions, the Ninth Circuit found it unlikely that Congress had intended also to include an additional cause of action in section 15A. "'[W]hen Congress wished to provide a private damage remedy, it knew how to do so and did so expressly.'" *Id.* (quoting *Touche Ross,* 442 U.S. at 572). Thus, the Ninth Circuit found it "highly improbable that 'Congress absentmindedly forgot to mention an intended private action.'" *Id.* (quoting *Transamerica Mortgage Advisors, Inc. v. Lewis,* 444 U.S. 11, 20, 100 S.Ct. 242, 62 L.Ed.2d 146 (1979)); *see also Transamerica,* 444 U.S. at 19 (stating that "where a statute expressly provides a particular remedy or remedies, a court must be chary of reading others into it"); *Gustafson v. Strangis,* 572 F.Supp. 1154, 1158 (D.Minn.1983) (stating that "Section 15A does not by its terms indicate a legislative intent to create a private remedy and there is simply no hint of such intent in the legislative history"). Thus, the second *Cort* factor cuts against Plaintiff's argument.

The third *Cort* factor (whether inferring a private remedy would be consistent with the underlying legislative scheme) also disfavors Plaintiff. The primary method of enforcement of the Exchange Act is not private suits. Rather, "[t]he Exchange Act establishes a scheme of regulation of the securities marketplace that combines self-regulation by the [self-regulatory organizations] with oversight and direct regulation by government agencies...." *Feins v. American Stock Exch., Inc.,* 81 F.3d 1215, 1218 (2d Cir.1996). Accordingly, "[t]he Exchange Act sets out a comprehensive regulatory scheme for the securities industry. Government agencies work together with the self-regulatory organizations to insure compliance with the statute, the rules promulgated thereunder, and the self-regulatory organization's own rules." *Id.* at 1221.

Indeed, in 1975 Congress passed amendments to the Exchange Act that strengthened this legislative scheme.

The method chosen to do this was to clarify the obligations of the [self-regulatory organizations], increase the authority of the SEC over the actions and rules of [self-regulatory organizations] and increase the SEC's enforcement capability. These changes, and the reasoning behind them, do not suggest Congressional intent to use private parties to enforce the statute through private causes of action. Rather, to effectuate its purpose, Congress sought to rely on the expanded oversight and enforcement powers of administrative agencies such as the SEC.

*Id.* at 1222; *see also Northwest Airlines, Inc. v. Transport Workers Union,* 451 U.S. 77, 97, 101 S.Ct. 1571, 67 L.Ed.2d 750 (1981) (stating that "[t]he presumption that a remedy was deliberately omitted from a statute is strongest when Congress has enacted a comprehensive legislative scheme including an integrated system of procedures for enforcement"); *Gustafson,* 572 F.Supp. at 1158 (stating that "[t]he statutory scheme, which provides for ... pervasive oversight of the NASD by the SEC ... suggests that Congress intended [this method] to be the exclusive means of enforcement"). Thus, the third *Cort* factor sharply disfavors Plaintiff's argument.

The fourth *Cort* factor (whether the cause of action traditionally belongs to state law) obviously favors Plaintiff; a violation of the federal securities laws is a federal matter. However, this does not overcome the weight of the other three factors, especially given the particular emphasis that congressional intent receives. *See City of Oakland,* 96 F.3d at 1211.

Thus, it appears that section 15A does not create a private right of action for a violation of the NASD's statutory duties. Before the Court can definitively rule on this issue, however, it must address several counterarguments that Plaintiff has raised.

**2. Plaintiff's Counterarguments**

Plaintiff relies on *Brawer v. Options Clearing Corp.,* 807 F.2d 297 (2d Cir.1986), *cert. denied,* 484 U.S. 819, 108 S.Ct. 76, 98 L.Ed.2d 39 (1987). Plaintiff claims that *Brawer* "held that where the [self-regulatory organization] acted 'in bad faith,' a private right of action would be implied against the [organization] for violation of its statutory duties." (Pl.'s Opp'n Br. at 2.)[3] Plaintiff is incorrect.

*Brawer* dealt with the continued validity of the Second Circuit's earlier decision in *Baird v. Franklin,* 141 F.2d 238 (2d Cir.1944), *cert. denied,* 323 U.S. 737, 65 S.Ct. 38, 89 L.Ed. 591 (1944). In *Baird,* the Second Circuit held that under certain circumstances a private right of action lies under section 6 of the Exchange Act against a securities exchange for failing to supervise its members. The *Brawer* court questioned the continued validity of *Baird* and held that "a private cause of action against a[] [self-regulatory organization] for failure to comply with one of its rules ... *if one exists at all,* may be brought only if it is premised upon allegations of fraud or bad faith." *Brawer,* 807 F.2d at 299 (emphasis added). The Second Circuit expressly declined to decide whether *Baird* remains good law after the 1975 amendments (which, as discussed above, strengthen the conclusion that a private right of action does not exist). *Id.* at 299 n. 2. The Second Circuit later hinted strongly that, in light of the amendments, *Baird* does *not* remain good law. *See Feins,* 81 F.3d at 1223–24; *see also Sparta Surgical Corp. v. NASD, Inc.,* No. C–95–3926–MHP, 1997 WL 50223, at *5 (N.D.Cal. Jan.30, 1997) (discussing *Brawer* and "declin[ing] to depart from the general rule and adopt a 'bad faith exception'.... Such an exception merely presents a pleading hurdle, and would significantly undermine the functioning of self-regulatory organizations"). Thus, *Brawer* does not offer Plaintiff the support for which he argues.

Plaintiff next cites *Hughes v. Dempsey–Tegeler & Co.,* 534 F.2d 156, 166 n. 5 (9th Cir.1976), *cert. denied,* 429 U.S. 896, 97 S.Ct.

---

**3.** Plaintiff alleges in his Complaint that the NASD acted in bad faith. (First Am.Compl.

¶ 21.)

259, 50 L.Ed.2d 180 (1976). *Hughes* recognized the "well established" rule that a private right of action lies under section 6 for a violation of a self-regulatory organization's own rules. *Id.* The Ninth Circuit cited *Baird,* which it described as the "leading case" on this issue. *Id.*

*Hughes* does not help Plaintiff for three reasons. First, it arose from facts that occurred before 1975. "Th[e] [1975] Amendments restructured § 6 ... and strengthened the role of the SEC in overseeing the activities of [self-regulatory organizations] to ensure that they act in the public interest.... [T]he amendments end the continuing vitality of *Baird.*" *Brawer v. Options Clearing Corp.,* 633 F.Supp. 1254, 1258 (S.D.N.Y.1986), *aff'd on other grounds,* 807 F.2d 297 (2d Cir.1986), *cert. denied,* 484 U.S. 819, 108 S.Ct. 76, 98 L.Ed.2d 39 (1987). Thus, *Hughes,* which relied so heavily on *Baird,* has been stripped of much of its precedential value by the 1975 amendments.

Second, *Hughes* dealt not with section 15A, but with section 6. Although section 6 is an analogous provision, *Jablon,* which declined to recognize a private right of action under section 15A, applies far more potently to the instant case than *Hughes.*

Third, subsequent Ninth Circuit cases further rob *Hughes* of its precedential value. Given the principles of statutory construction articulated in *Jablon,* it is difficult to reconcile its conclusion with *Hughes.* Thus, *Jablon* seems to have effectively overruled *Hughes.* Indeed, the Ninth Circuit later cited *Jablon* for the proposition that "violation of an exchange rule will not support a private claim." *In re VeriFone Sec. Litig.,* 11 F.3d 865, 870 (9th Cir.1993). This further indicates that the Ninth Circuit has overruled *Hughes.* For all these reasons, *Hughes* does not help Plaintiff.

Plaintiff next cites *Rich v. NYSE, Inc.,* 509 F.Supp. 87 (S.D.N.Y.1981), which permitted a private suit under section 6 to proceed against the New York Stock Exchange for failure to supervise its members adequately. *Rich,* however, is of dubious precedential value for several reasons. First, *Rich* dealt with facts that arose prior to the 1975 amendments to the Exchange Act. Although the *Rich* court commented on the 1975 amendments, its comments were mere dicta. Second, the Second Circuit has cast severe doubt on the correctness of *Rich's* holding. *See Feins,* 81 F.3d at 1220–22 (refusing, with reasoning that applies equally to sections 6 and 15A, to find an implied right of action under section 19 of the Exchange Act). Third, other courts that have considered whether section 6 provides a private right of action after the 1975 amendments have not followed *Rich. See generally Spicer v. Chicago Bd. of Options Exch., Inc.,* 977 F.2d 255, 259 n. 2 (7th Cir.1992) (collecting cases).[4]

Given all the considerations articulated above, this Court likewise declines to follow *Rich.* The Court holds that a private right of action under section 15A does not exist against the NASD for failing to supervise its members, in violation of either its own rules or its statutory duties. *See Jablon,* 614 F.2d at 681; *Gustafson,* 572 F.Supp. at 1155 (broadly holding that section 15A "does not create a private cause of action for the NASD's failure to prevent member misconduct"). Accordingly, the Court dismisses Plaintiff's first cause of action.

## C. Plaintiff's Second Cause Of Action

■ Plaintiff's second cause of action is for breach of third-party-beneficiary contracts. Plaintiff alleges that he was the third-party beneficiary of the NASD's registration statement that it filed with the SEC and the "written agreement, with the securities industry, in the form [of] the NASD's Certificate of Incorporation and the ... By–Laws of the NASD." (First Am.Compl. ¶¶ 61, 66.) Plaintiff alleges that Defendant breached these contracts by failing to supervise LJSC.

Even assuming that the documents Plaintiff relies on are third-party-beneficiary con-

---

4.  Plaintiff argues that the Seventh Circuit's opinion in *Spicer* permits a private suit under section 6(b) against an exchange for failing to supervise its members if the exchange had the capability to force compliance with its rules. This is incorrect. The Seventh Circuit squarely held that "§ 6(b) may *never* support a private suit against an exchange for violating or failing to enforce its own rules...." *Id.* at 256 (emphasis added).

tracts,[5] Plaintiff's contract claim fails. The gravamen of Plaintiff's claim is that the NASD failed to supervise LJSC adequately. This claim merely restates Plaintiff's first cause of action in different terms. It is an attempt to evade the doctrine that no private right of action exists against the NASD for failing to supervise its members adequately.

Courts that have considered similar attempts have rejected them. *See, e.g., In re Lake States Commodities, Inc.*, 936 F.Supp. 1461, 1470 n. 13 (N.D.Ill.1996) (stating that "it would be difficult to reconcile the rejection of an implied right of action under *Spicer* ... with a rule permitting ... third-party beneficiary claims...."); *Salzmann v. Prudential Sec. Inc.*, No. 91–4253(KTD), 1994 WL 191855, at *7–8 (S.D.N.Y. May 16, 1994) (stating that third-party beneficiary claims are simply attempts to circumvent the decisions that hold that plaintiffs do not have a private right of action under [NASD] rules.... To hold that plaintiffs are entitled to make a third-party beneficiary claim is to hold, in effect, that plaintiffs have a private cause of action under ... the NASD rules); *Bloch v. Prudential–Bache Sec.*, 707 F.Supp. 189, 196 (W.D.Pa.1989) (stating that "third party beneficiary liability seems incongruous with the large body of case law holding that no private cause of action exists ·for violation of the rules of self-regulatory organizations").[6]

This Court likewise declines to allow Plaintiff to circumvent the doctrine that no private right of action exists against the NASD for failing to supervise its members properly. The Court therefore dismisses Plaintiff's second cause of action for failure to state a claim on which the Court can grant relief.

**5.** This is a dubious proposition. *Cf. Pittsburgh Terminal Corp. v. Baltimore & Ohio R.R. Co.*, 509 F.Supp. 1002, 1016 (W.D.Pa.1981) (holding that a listing agreement between a corporation and a stock exchange did not create third-party-beneficiary rights in investors), *aff'd in Part and reversed in part on other grounds*, 680 F.2d 933 (3d Cir.1982), *cert. denied*, 459 U.S. 1056, 103 S.Ct. 475, 476, 74 L.Ed.2d 621 (1982).

**6.** Plaintiff cites *Weinberger v. NYSE*, 335 F.Supp. 139 (S.D.N.Y.1971), which allowed a third-party-beneficiary claim to proceed against the NYSE. However, *Weinberger* (a pre-1975 amendments case) rested heavily on *Baird*, which, as discussed above, retains questionable vitality. The

## D. Plaintiff's Remaining Causes Of Action

Plaintiff's remaining causes of action articulate state-law negligence claims. Plaintiff alleges that the NASD acted negligently by not properly supervising LJSC.

These claims, like Plaintiff's second cause of action, are simply the first cause of action stated in different terms. A district court recently confronted a similar situation in *Sparta Surgical Corp. v. NASD, Inc.*, No. C–95–3926–MHP, 1997 WL 50223 (N.D.Cal. Jan.30, 1997). In *Sparta*, the plaintiff alleged an implied cause of action against the NASD under section 19(g) of the Exchange Act. The plaintiff also alleged seven common law causes of action. The court first held that no implied right of action exists under section 19(g) for the NASD's violation of its own rules. The court then stated:

> [A]rtful pleading cannot be used to disguise federal issues in state law terms. *See, e.g., Federated Dept. Stores, Inc. v. Moitie*, 452 U.S. 394, 397 n. 2, 101 S.Ct. 2424, 69 L.Ed.2d 103 (1981) (recognizing that a court must determine the true nature of the claim, regardless of the plaintiff's characterization).

> ... It remains evident ... that issues of NASD rule violations underlie the state common law claims.... It is thus clear that all seven of the plaintiff's common law claims are founded on the conduct of defendants in their role as a self-regulating organization. That these claims have been pled in common law terms does not negate this fact.

*Weinberger* court stated that "[s]ince the [NYSE] is already liable [under *Baird*] for any breach of its statutory duty, the imposition of a virtually coterminous contractual duty will not have the disruptive effect of an unexpected civil liability, which is sometimes used as an argument against third-party recovery." *Id.* at 144 n. 10. In this case, of course, the Court already has found that no private right of action exists under section 15A. Imposing third-party-beneficiary liability would have precisely the disruptive effect the *Weinberger* court noted, but under *Baird* did not have to take into account. Accordingly, the Court declines to follow *Weinberger*.

*Id.* at \*3 (citations and footnote omitted). Accordingly, the court dismissed Plaintiff's state law claims.

Other courts have taken similar approaches. *See, e.g., Kakar v. Chicago Board Options Exch., Inc.,* 681 F.Supp. 1039, 1041 (S.D.N.Y.1988) (construing a common law claim as an impermissible implied right of action under section 6 because "the gravamen of [the plaintiff's] complaint is the [self-regulatory organization's] failure to enforce its own rules"); *FDIC v. NASD, Inc.,* 582 F.Supp. 72, 75 (S.D.Iowa 1984) (holding that "a customer of a member of a national securities exchange has no common law cause of action against the association for negligent ... supervision of the member"), *aff'd,* 747 F.2d 498 (8th Cir.1984); *Lacovara v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 551 F.Supp. 601, 604 (E.D.Pa.1982) (stating that "there is no common law cause of action against an exchange for failure to supervise its members").[7]

This Court similarly declines to allow Plaintiff to evade the principle that no private right of action exists for the NASD's failure to supervise its members. Thus, the Court dismisses Plaintiff's third, fourth, fifth, and sixth causes of action for failure to state claims on which the Court can grant relief.[8]

## IV. Conclusion

For the reasons stated above, the Court grants Defendant NASD's Motion to Dismiss Plaintiff's First Amended Complaint.[9] Plain-tiff may file a second amended complaint within thirty days of this Order.

IT IS SO ORDERED.

---

7. Plaintiff cites *Bruan, Gordon & Co. v. Hellmers,* 502 F.Supp. 897, 903 (S.D.N.Y.1980). In *Hellmers,* the district court examined article I, section 4(a)(3) of the NASD bylaws. The court opined that the bylaw "appear[s] to have waived any immunity [the NASD] might enjoy for intentional torts." *Id.*

*Hellmers* does not help Plaintiff for three reasons. First, the court examined this issue on a motion for summary judgment and did not definitively rule on it. The court merely concluded that "at best there remains a genuine issue of material fact as to the proper application of this provision and whether NASD has agreed that it and its officers may be held civilly liable for intentional torts." *Id.* Second, the Eighth Circuit subsequently studied section 4(a)(3) closely and concluded that it does not permit suits against the NASD. *Austin Mun. Sec., Inc. v. NASD, Inc.,* 757 F.2d 676, 691 (1985). Third, even if the

bylaw provision permits suits for intentional torts, it only applies to situations where NASD staff members commit intentional torts against NASD members. *See id.* It does not apply where the NASD commits torts against *customers* of members.

8. Plaintiff argues in his Opposition Brief that the NASD engaged in willful misfeasance. However, a review of Plaintiff's First Amended Complaint reveals that Plaintiff has alleged negligence claims. The Court intimates no view on whether an investor properly can sue the NASD for intentional torts.

9. Defendant has argued that the Court should dismiss each of Plaintiff's causes of action for several additional reasons. Because the Court has dismissed the First Amended Complaint on the grounds stated above, it need not address these arguments.