**PINNACLE SECURITY INVESTMENT ASSOCIATES, L.P., Plaintiff,**

**v.**

**AMERICAN STOCK EXCHANGE, INC., Defendant.**

**No. 96 Civ. 2275 (MGC).**

United States District Court,
S.D. New York.

Nov. 26, 1996.

Allan H. Carlin, New York City, for Plaintiff.

Kirkpatrick & Lockhart LLP by Warren H. Colodner, David Simon, Leslie Shaunty, Audrey Venezia, New York City, for Defendant.

### OPINION

CEDARBAUM, District Judge.

In this action, Pinnacle Security Investment Associates ("Pinnacle"), a limited partnership, sues the American Stock Exchange, Inc. (the "Exchange") for damages from an alleged violation of § 6(c)(1) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78f(c)(1). Section 6(c)(1) provides that "[a] national securities exchange shall deny membership to ... any person ... which is not a registered broker or dealer." The Exchange has moved to dismiss the complaint pursuant to Fed.R.Civ.P. 12(b)(6) on the grounds that: (1) § 6(c)(1) does not apply to the discipline of an existing member but rather to the denial of a membership application; and (2) there is no private right of action under § 6(c)(1). This motion presents issues of first impression. For the reasons that follow, the motion to dismiss is granted.

### *Allegations of the Complaint*

In August 1994, Pinnacle entered into an agreement with U.S. Equity Management Corporation ("USEMCO"), a registered broker-dealer and a member of the New York Stock Exchange, pursuant to which USEMCO would invest Pinnacle's funds. (Am. Compl. ¶¶ 6–7, 9.) On November 9, 1994, the Securities and Exchange Commission entered an order canceling the registration of USEMCO as a broker-dealer. (*Id.* ¶ 10.) The Exchange should have known of that order on or about the same date. (*Id.* ¶ 15.) According to the complaint, the Exchange negligently failed to suspend USEMCO's membership until April 1995. (*Id.* ¶¶ 16–17.) Between November 9, 1994, and March 29, 1995, Pinnacle invested $1,234,000 with USEMCO. (*Id.* ¶ 13.) Pinnacle would not have invested those funds if USEMCO were not a member of the Exchange. (*Id.* ¶ 14.) Upon USEMCO's suspension, it ceased operating and did not return any of Pinnacle's funds. (*Id.* ¶ 17.)

### *Discussion*

On a motion to dismiss the complaint, the factual allegations of the complaint are accepted as true, *Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit,* 507 U.S. 163, 164, 113 S.Ct. 1160, 1161, 122 L.Ed.2d 517 (1993), and all reasonable inferences are drawn in favor of the plaintiffs, *Bolt Electric, Inc. v. City of New York,* 53 F.3d 465, 469 (2d Cir.1995). A motion to dismiss should be granted only if it appears beyond doubt that the plaintiffs can prove no set of facts that would entitle them to relief. *Id.*

### *Pinnacle's Claim Under Section 6(c)(1)*

Section 6(c)(1) of the Exchange Act provides: "A national securities exchange shall deny membership to (A) any person, other than a natural person, which is not a registered broker or dealer or (B) any natural person who is not, or is not associated with, a registered broker or dealer." 15 U.S.C. § 78f(c)(1). The Exchange argues that § 6(c)(1) does not apply to the facts of this case, for reasons discussed below, and that therefore the complaint should be construed as arising under § 6(b). The Second Circuit held in *Baird v. Franklin,* 141 F.2d 238, 244 (2d Cir.1944), *cert. denied,* 323 U.S. 737, 65 S.Ct. 38, 89 L.Ed. 591 (1944), that § 6(b) as it existed prior to 1975 imposed a duty on exchanges to enforce their own rules. That duty was made explicit by the 1975 amendments to the Exchange Act. Securities Acts Amendments of 1975, Pub.L.No. 94–29, 89 Stat. 97 (1975)(the "1975 Amendments"); § 19(g), 15 U.S.C. § 78s(g). The Exchange contends that the gravamen of Pinnacle's complaint is that the Exchange failed to enforce its rule providing that "[a]n organization shall cease to be a member organization and shall dispose of its membership if it becomes subject to any 'statutory disqualification' as defined in Section 3(a)(39) of the Securities Exchange Act of 1934." Am. Stock Ex. Guide (CCH) ¶ 9179 at 2319. Since USEMCO became subject to a statutory disqualification upon the loss of its registration, 15 U.S.C. § 78C(c)(39)(B)(i)(I), the Exchange argues that Pinnacle's complaint is

really based on the Exchange's failure to enforce its rules as required by § 6(b). Pinnacle, however, expressly disclaims reliance on § 6(b). (Mem. of Pl. in Opp'n to Def.'s Mot. to Dismiss the Compl., at 2 n. 1.) Thus, I will not read the complaint as arising under § 6(b) but will address the alleged violation of § 6(c)(1).

It is doubtful that the Exchange's failure to suspend or otherwise discipline USEMCO constitutes a violation of § 6(c)(1). The statute speaks of "denying" membership. It is undisputed that when USEMCO was admitted as a member of the Exchange, it was a registered broker-dealer. Pinnacle contends that once USEMCO lost its registration, the Exchange should have "denied" it membership. Pinnacle's position might be better described as a claim that the Exchange did not promptly discipline an existing member. But the plain language of the statute appears to refer to denial of a membership application rather than to discipline of a member.

Moreover, the legislative history of the 1975 Amendments, which first enacted § 6(c)(1), supports reading § 6(c)(1) to apply to denials of membership to applicants and not to discipline of existing members. The Senate Report notes: "The self-regulatory organizations exercise government power, and they do so in basically three ways ...: (1) by imposing a disciplinary sanction, broadly defined, on a member ..., (2) by denying membership to an applicant, and (3) by requiring members to cease doing business ... with a particular non-member or with respect to a particular security." Senate Committee on Banking, Housing and Urban Affairs, S.Rep.No. 75, 94th Cong., 1st Sess. 23 (1975)("Senate Report"), *reprinted in* 1975 U.S.C.C.A.N. 179, 202–03. The Senate Report goes on to explain that "[w]hen a member violates the Act or a self-regulatory organization's rules, the organization must be in a position to impose appropriate penalties [which, under § 6(b)(6), include expulsion and suspension].... Similarly, a self-regulatory organization must be able to prevent an unqualified person from obtaining access to facilities and business opportunities by denying membership." *Id.* at 203. These statements support an interpretation that

Congress viewed denial of membership and discipline as two separate functions to be performed by exchanges.

The structure of the statute as a whole also suggests that denial of membership is something separate and independent of discipline of existing members, and that Congress intended § 6(c)(1) to apply only to the former. Section 6(b)(2) ensures that, subject to § 6(c), "any registered broker or dealer ... may become a member" of the Exchange. 15 U.S.C. § 78f(b)(2). Section 6(c), entitled in part "denial of membership in national exchanges," provides that an exchange "shall deny membership to ... any person ... which is not a registered broker or dealer" and "may ... deny membership to any registered broker or dealer ... who is subject to a statutory disqualification." 15 U.S.C. § 78f(c)(1)–(2). These provisions were enacted to help clarify regulatory responsibilities by ensuring that an exchange's "undertaking to regulate a broker or dealer would not be discretionary with respect to persons qualified for membership. In other words, if a person meets the requirements for membership he must be admitted." Senate Report at 202. Once a person is admitted as a member, the Exchange has a responsibility to discipline that member. "[W]ith respect to a person admitted, *i.e.*, a member, an exchange or association must enforce compliance with its rules, the Exchange Act, and the rules and regulations thereunder." *Id.* Section 6(b)(6) requires that "[t]he rules of the exchange provide that ... its members ... shall be appropriately disciplined for violation of the provisions of [the Exchange Act], the rules or regulations thereunder, or the rules of the exchange, by expulsion, suspension, ... or any other fitting sanction." 15 U.S.C. § 78f(b)(6). Thus, the statute itself has separate provisions dealing with an exchange's responsibility and power to deny membership to an applicant and an exchange's independent power to discipline an existing member.

The plain language of the statute, the legislative history and the overall statutory structure all point to the conclusion that § 6(c)(1) does not apply to the facts of this case. But even if § 6(c)(1) were held to

apply, there is no private right of action under the statute.

### Implied Private Right of Action Under Section 6(c)(1)

In *Cort v. Ash,* 422 U.S. 66, 78, 95 S.Ct. 2080, 2087–88, 45 L.Ed.2d 26 (1975), the Supreme Court set forth four factors to be considered in determining whether a private right of action should be implied from a statute: (1) whether the plaintiff is a member of the class for whose "especial benefit" the statute was enacted; (2) whether there is any indication of legislative intent, explicit or implicit, to create or deny such a remedy; (3) whether it is consistent with the underlying purposes of the legislative scheme to imply such a remedy; and (4) whether the cause of action is one traditionally relegated to state law.

More recent Supreme Court cases, however, have emphasized that the ultimate issue is one of legislative intent. In *Touche Ross & Co. v. Redington,* 442 U.S. 560, 99 S.Ct. 2479, 61 L.Ed.2d 82 (1979), the Court held that there was no implied private right of action under the 1972 version of § 17(a) of the Exchange Act, which required broker-dealers to file certain financial reports. In reaching its holding, the Court noted that the four *Cort* factors were not entitled to equal weight but that "[t]he central inquiry remains whether Congress intended to create, either expressly or by implication, a private cause of action." *Id.* at 575, 99 S.Ct. at 2489. The Court first analyzed the language of the statute, which did not provide for any private right of action. Next, the Court turned to the legislative history, which was silent as to any private remedy. The Court noted that "implying a private right of action on the basis of congressional silence is a hazardous enterprise, at best." *Id.* at 571, 99 S.Ct. at 2486. Finally, the Court found justification for its decision not to imply a private remedy in the statutory scheme of which § 17(a) was a part. Since surrounding provisions explicitly granted private rights of action, "[o]bviously, then, when Congress wished to provide a private damage remedy, it knew how to do so and did so expressly." *Id.* at 572, 99 S.Ct. at 2487.

Subsequent Supreme Court cases have agreed that "what must ultimately be determined is whether Congress intended to create the private remedy asserted." *Transamerica Mortgage Advisors, Inc. v. Lewis,* 444 U.S. 11, 15–16, 100 S.Ct. 242, 245–46, 62 L.Ed.2d 146 (1979). The *Cort* factors are "guides to discerning that intent." *Thompson v. Thompson,* 484 U.S. 174, 108 S.Ct. 513, 98 L.Ed.2d 512 (1988). Legislative silence "is not inevitably inconsistent with an intent on its part to make [a private] remedy available," since intent "may appear implicitly in the language or structure of the statute, or in the circumstances of its enactment." *Transamerica* at 18, 100 S.Ct. at 246; *Thompson* at 179, 108 S.Ct. at 516. But for a private remedy to exist, it must be possible to infer congressional intent to create such a remedy from "the language of the statute, the statutory structure, or some other source." *Id.* at 179, 108 S.Ct. at 516.

There is no basis in the language of § 6(c)(1) from which to infer that Congress intended a private remedy to exist; the provision by its terms merely sets forth a requirement that self-regulatory organizations deny membership to persons who are not registered broker-dealers. Furthermore, the legislative history of the 1975 Amendments is silent on the specific issue of whether a private right of action is available under the section. Courts should be wary of implying rights of action in the absence of affirmative evidence of congressional intent. *Touche Ross,* 442 U.S. at 571, 99 S.Ct. at 2486–87.

Moreover, the overall purpose of the 1975 Amendments was to increase the SEC's oversight of securities exchanges and to provide the SEC with better enforcement tools in order to "ensure that there is no gap between self-regulatory performance and regulatory need." Senate Report at 181; *Feins v. American Stock Exchange, Inc.,* 81 F.3d 1215, 1222 (2d Cir.1996). Congress believed that the SEC needed more flexible regulatory options in addition to the available sanctions of suspension and deregistration. Therefore, it gave the SEC powers not previously available, such as the power to censure and place restrictions on the activities of a self-regulatory organization, to censure or

remove from office an officer or director of a self-regulatory organization who willfully failed to enforce compliance with the Exchange Act, or the rules thereunder, and to apply to a federal court for injunctive relief. 15 U.S.C. §§ 78s(h), 78u(d) & (e). The Senate Report explains that these newly available enforcement mechanisms "[were] intended to provide more usable sanctions than the SEC's traditional 'big stick.'" Senate Report at 212. The thrust of these changes was to increase the SEC's ability to oversee and regulate the activities of the exchanges. As the Second Circuit explained in holding that there is no private right of action under §§ 19(d) & (f) of the Exchange Act, these changes and the reasoning behind them "do not suggest Congressional intent to use private parties to enforce the statute through private causes of action." *Feins,* 81 F.3d at 1222. Furthermore, "[t]he addition of these expanded and more flexible powers argues that Congress selected the experience and the expertise of the SEC as the preferred source of remedies for [a self-regulatory organization's] shortcomings." *Brawer v. Options Clearing Corp.,* 633 F.Supp. 1254, 1260 (S.D.N.Y.1986), *aff'd on other grounds,* 807 F.2d 297 (2d Cir.1986), *cert. denied,* 484 U.S. 819, 108 S.Ct. 76, 98 L.Ed.2d 39 (1987). Thus, the legislative history does not support an inference that Congress intended a private right of action under § 6(c)(1); rather, it provides affirmative evidence that Congress viewed the SEC as the sole agent for enforcing the § 6 duties of self-regulatory organizations and did not intend to create a private remedy for violations of § 6(c)(1).

This conclusion is not undermined by *Baird v. Franklin,* 141 F.2d 238 (2d Cir. 1944), *cert. denied,* 323 U.S. 737, 65 S.Ct. 38, 89 L.Ed. 591 (1944). In that case, the Second Circuit held that there was an implied right of action under § 6(b) as it existed before the 1975 Amendments. *Baird,* however, did not deal with the provision at issue here. Section 6(c)(1) was inserted into the statute by the 1975 Amendments. Thus, even if *Baird* continues to be good law, it does not govern this case.[1]

### Conclusion

For the foregoing reasons, defendant's motion to dismiss the complaint is granted.

SO ORDERED.

---

**1.** There is a serious question as to whether *Baird* remains good law after the 1975 Amendments even for actions under § 6(b), particularly since Supreme Court jurisprudence in recent years has significantly narrowed the situations in which a private cause of action may be implied. While the Second Circuit has declined to rule on the continuing vitality of *Baird, Brawer v. Options Clearing Corp.,* 807 F.2d 297, 299 n. 2 (2d Cir. 1986), the Seventh Circuit has held that "[t]o the extent, if any, that § 6(b) once provided an implied remedy against an exchange for failing to comply with or enforce its own rules, the 1975 Amendments conclusively demonstrate that Congress did not intend to preserve that remedy, at least in § 6(b)." *Spicer v. Chicago Board of Options Exchange,* 977 F.2d 255, 261 (7th Cir.1992). *See also Market Street Limited Partners v. Englander Capital Corp.,* 1993 WL 212817 (S.D.N.Y. 1993) (no private right of action under § 6(b)); *Brawer v. Options Clearing Corp.,* 633 F.Supp. 1254 (1986) (same), *aff'd on other grounds,* 807 F.2d 297 (2d Cir.1986), *cert. denied,* 484 U.S. 819, 108 S.Ct. 76, 98 L.Ed.2d 39 (1987).