(May 10, 2004)

■ Dawn Bantum, Respondent, v American Stock Exchange, LLC, et al., Appellants, and Heights Partners, Inc., et al., Defendants. [777 NYS2d 137]—

In an action, inter alia, to recover damages for hostile work environment, sexual harassment, and discriminatory retaliation pursuant to New York State Executive Law article 15 and title 8 of the Administrative Code of the City of New York, the defendants American Stock Exchange, LLC, and Eric S. Brown, appeal, and the defendant Richard T. Chase separately appeals, as limited by their briefs, from so much of an order of the Supreme Court, Queens County (Dollard, J.), dated April 3, 2003, as denied their motions pursuant to CPLR 3211 (a) (7) and (e) to dismiss the complaint insofar as asserted against them.

Ordered that the order is reversed insofar as appealed from, on the law, with one bill of costs to the appellants appearing separately and filing separate briefs, the motions are granted, the complaint is dismissed insofar as asserted against the appellants, and the action against the remaining defendants is severed.

At issue here is whether a broker may bring an action under the New York State Human Rights Law (Executive Law § 290 et seq.) and the New York City Human Rights Law (Administrative Code of City of NY § 8-101 et seq.) to recover damages for sexual harassment and discriminatory retaliation allegedly encouraged by the defendant the American Stock Exchange, LLC (hereinafter AMEX), when AMEX failed to conduct a proper investigation into the plaintiff's claims of sexual harassment perpetrated by another broker.

AMEX is a self-regulating organization required by the Securities Exchange Commission (hereinafter the SEC) and the Securities Exchange Act (hereinafter the Exchange Act) to promulgate and enforce rules protecting investors and governing members (*see* 15 USC § 78f). In accordance with the Exchange Act, AMEX conducts disciplinary proceedings when a member, or a person associated with a member, is suspected of violating federal securities laws or internal AMEX rules or regulations.

The plaintiff was a broker who traded on the AMEX trading floor. She claims that she was sexually harassed by the defendant Lawrence Polatchek, a competing trader and member of AMEX, between March and October 2000. In November 2000, the plaintiff lodged a complaint against Polatchek with the National Association of Securities Dealers, which referred the matter to AMEX's staff attorney, the defendant Eric S. Brown.

Brown met with the plaintiff in February 2001 to discuss her allegations. According to AMEX, Brown sent an advisement letter to Polatchek addressing the plaintiff's allegations of sexual harassment on January 2, 2001. Formal charges were ultimately filed against Polatchek in August 2002, following several attempts by AMEX to resolve the matter. The plaintiff claims that the appellants, AMEX, Brown, and Chase aided and abetted Polatchek's sexual harassment and encouraged retaliatory conduct from other members of AMEX by failing to conduct a proper and thorough investigation.

The Supremacy Clause of the United States Constitution "vests in Congress the power to supersede not only State statutory or regulatory law but common law as well" (*Guice v Charles Schwab & Co.,* 89 NY2d 31, 39 [1996], *cert denied* 520 US 1118 [1997]). As a general rule, the question of preemption is ultimately one of congressional intent, which may be express or implied (*id.*). In order to determine that intent, the United States Supreme Court has identified three types of preemption: (1) "express preemption," where Congress explicitly defines the extent to which its enactment preempts state law, (2) "field preemption," where Congress regulates a field so pervasively that an intent to occupy the field exclusively may be inferred, and (3) "conflict preemption," where the state and federal law actually conflict so that it is impossible for a party to simultaneously comply with both, or the state law stands as an obstacle to the execution of the full purposes and objectives of Congress (*see Barnett Bank v Nelson,* 517 US 25 [1996]; *Hines v Davidowitz,* 312 US 52 [1941]; *City of New York v Job-Lot Pushcart,* 88 NY2d 163 [1996], *cert denied sub nom. JA-RU v City of New York,* 519 US 871 [1996]; *Guice v Charles Schwab & Co., supra*).

Moreover, federal administrative agency regulations promulgated pursuant to the congressional delegation of quasi-legislative authority may also preempt state law (*see Guice v Charles Schwab & Co., supra*).

In the instant case, the legislative history suggests that Congress intended to preempt state interference with a self-regulating organization's regulatory functions through implementing regulations of the SEC (*see Feins v American Stock Exch.*, 81 F3d 1215, 1218 [1996]). As already noted, AMEX is registered as a national securities exchange pursuant to 15 USC § 78f and is a self-regulating organization as defined by 15 USC § 78c (a) (26). The SEC is the "appropriate regulatory agency" for AMEX and its members (15 USC § 78c [a] [34] [E]). The Exchange Act establishes a scheme of regulation of the securities marketplace that combines self-regulation by the securities exchanges with oversight and direct regulation by the SEC (*see Feins v American Stock Exch., supra*).

Accordingly, to allow the plaintiff's claims against AMEX arising out of its disciplinary functions would clearly "stand[ ] as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress" (*Barbara v New York Stock Exch.*, 99 F3d 49, 59 [1996], quoting *Hines v Davidowitz, supra*), which is essentially to encourage stringent self-regulation of the securities industry.

In light of our determination, it is unnecessary to address the appellants' remaining contentions. H. Miller, J.P., Luciano, Schmidt and Townes, JJ., concur.